

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-14-00208-CV

HAL SAULS                                                                 APPELLANT

V.

MUNIR BATA, LLC, AND THE                                    APPELLEES
COLONY ASSETS
DEVELOPMENT, LLC

----------

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 14-04543-367

----------

**AND**

### NO. 02-14-00214-CV

HAL SAULS                                                                 APPELLANT

V.

MUNIR BATA, LLC; WILLIAM J.                               APPELLEES
BALDWIN; AMERICAN NATIONAL
DEVELOPMENT, LP; CHICAGO
TITLE COMPANY; AND THE
COLONY ASSETS
DEVELOPMENT, LLC

FROM THE 431ST DISTRICT COURT OF DENTON COUNTY
TRIAL COURT NO. 2008-20011-158

----------

## MEMORANDUM OPINION[1]

----------

Appellant Hal Sauls appeals from (1) the trial court's order sustaining appellees The Colony Asset Development, LLC (Colony Asset) and Munir Bata, LLC's (MB) objections to Sauls's summary-judgment evidence and (2) the trial court's order granting Colony Asset and MB's motion for summary judgment on Sauls's counterclaims. We dismiss one appeal and affirm the trial court's summary-judgment orders in the other appeal.

## I. BACKGROUND

On November 15, 2007, Sauls filed an affidavit of claim in support of his mechanic's and materialman's lien (the M&M lien) against property located in Denton County. In the affidavit, Sauls averred that he was owed $17,601.41 after he "prepared plans and/or plats, rendered services, and performed labor . . . during May through August, 2007" on the Denton County property after being hired by appellee William J. Baldwin, who was the president and "Authorized Agent" of American National Development, LP (American). Sauls believed the

---

[1]*See* Tex. R. App. P. 47.4.

owners of the Denton County property at the time he performed the work were Colony Asset "and or" MB; however, there is evidence that MB sold the property to Colony Asset in 2004.[2] Sauls claimed that Baldwin, acting as the president and authorized agent of American, hired him for three, distinct jobs in 2007: (1) remodel a shopping center in Collin County (the Collin County project),[3] (2) build retaining walls, storm sewers, and box culverts on the Denton County property (the box-culvert project), and (3) act as job superintendent on the Denton County property (the superintendent project). The M&M lien did not assert a claim against the Collin County property.

Shortly after Sauls's M&M lien was filed, MB, Colony Asset, and Bata notified Sauls that no agreement had been entered into between MB, Colony Asset, Bata, American, or Baldwin because Colony Asset had not yet hired a general contractor for the box-culvert project or the superintendent project on the Denton County property. Although MB, Colony Asset, and Bata asked Sauls to release his M&M lien, Sauls refused. On January 10, 2008, MB filed suit against Sauls raising a fraudulent-lien claim (the original case). *See* Tex. Civ. Prac. & Rem. Code Ann. §§ 12.002, 12.003(a)(8) (West Supp. 2014). The next day, appellee Chicago Title Insurance Company (Chicago Title) asked Sauls to sign a

---

[2]Appellee Munir Bata admittedly is the president of both MB and Colony Asset.

[3]Sauls asserted the owner of the shopping center in Collin County was MB. The Collin County project never occurred.

release of the M&M lien on the Denton County property in exchange for "payment at closing in the sum of $19,951.41." Sauls signed the notarized release on January 12, 2008, but the record does not reflect that the release was filed. *See* Tex. Prop. Code Ann. § 53.152 (West 2014). On January 17, 2008, Sauls contacted Chicago Title, complaining that he had not been paid as promised for signing the release and threatened to "proceed with legal action."

Colony Asset intervened in MB's original case against Sauls and also asserted a statutory, fraudulent-lien claim against Sauls. *See* Tex. R. Civ. P. 60. At some point, Sauls filed a third-party petition in the original case against American, Baldwin, and Chicago Title.[4] *See* Tex. R. Civ. P. 38(a). On May 6, 2008, MB filed a motion to nonsuit its claims against Sauls.[5] *See* Tex. R. Civ. P. 162.

Sauls raised three counterclaims against MB and Colony Asset in the original case: quantum meruit/unjust enrichment, breach of contract, and negligent misrepresentation.[6] *See* Tex. R. Civ. P. 97. Regarding the Collin County project, Sauls raised only the breach-of-contract counterclaim and asserted damages of $4,600, which was the amount he alleged remained

---

[4]When Sauls later amended his third-party petition, he named only Baldwin and American as third-party defendants.

[5]The record does not reflect that the trial court acted on the motion.

[6]Sauls pleaded his negligent-misrepresentation claim in the alternative. Sauls raised the same claims against American and Baldwin in his third-party petition.

unpaid. In his breach-of-contract counterclaim regarding all three projects, Sauls asserted that MB and Colony Asset could be held liable for breach of contract by virtue of American and Baldwin's actual and apparent authority conferred by MB and Colony Asset. Both MB and Colony Asset filed verified answers to Sauls's counterclaims, generally denying Sauls's allegations and asserting that they could not be sued in the capacity in which they had been sued because they had never entered into any agreement with Sauls, American, or Baldwin and because MB did not own the Denton County property at the time Sauls alleged he worked on the project. *See* Tex. R. Civ. P. 92, 93(2).

On September 13, 2013, MB and Colony Asset, as counterdefendants, filed a no-evidence motion for summary judgment directed to Sauls's counterclaims, including his two liability theories applicable to Sauls's breach-of-contract counterclaim. *See* Tex. R. Civ. P. 166a(i). On September 17, 2013, MB and Colony Asset filed and served on Sauls by fax a notice that their no-evidence motion for summary judgment had been set for a hearing on October 11, 2013. *See* Tex. R. Civ. P. 166a(c). That same day, the trial court sent the parties a letter stating that it would decide the motion "without argument" at its "earliest convenience following" the October 11, 2013 submission date, but that the submission date was "the same as a hearing date for purposes of calculating the [seven-day] deadline to file a response to the motion or for movant's reply to the response, if any." *See id.*

On October 4, 2013, Sauls responded, arguing probative evidence raised genuine issues of material fact, preventing summary judgment, and attached his affidavits; the M&M lien; three affidavits by Bata, which had been previously filed with the trial court; "Contractual Documents between . . . Bata and . . . Baldwin"; an application submitted to the city where the box-culvert and superintendent projects were located, seeking approval of the proposed development (the development application); and minutes from a June 21, 2007 meeting between American, Colony Asset, the Texas Department of Transportation (TDOT), an engineering firm, and Bata about the box-culvert and superintendent projects. On October 10, 2013,[7] MB and Colony Asset replied in support of their no-evidence motion and objected to most of Sauls's summary-judgment evidence. They did not object to the M&M lien or Bata's previously filed affidavits. That same day, Sauls responded to their evidentiary objections but also attached "additional summary judgment evidence." This evidence consisted of MB's original petition, MB's subsequent nonsuit, and excerpts from Bata's September 15, 2010 deposition.

On October 18, 2013, the trial court dismissed the original case for want of prosecution after the parties "failed to announce 'ready' or 'not ready' for [the October 21, 2013] trial [setting], to request a pre-trial hearing or otherwise

_____

[7]MB, Colony Asset, and the trial court repeatedly stated that the objections and response were filed on October 8, 2013. However, the record reflects that they were served on October 8 but filed on October 10. We will rely on the actual filing date in referring to this pleading.

6

communicate in any manner with the Court regarding their readiness for trial." *See* Denton Cnty. (Tex.) Dist. & Statutory Cnty. Cts. Loc. R. 2.10. Sauls filed a motion to reinstate the case, which the trial court granted on December 30, 2013. The trial court informed the parties that it would issue a ruling on the no-evidence motion and also set the case for a pretrial conference on April 4, 2014, with a trial date of April 7, 2014.

On January 29, 2014, the trial court sustained each of MB and Colony Asset's objections to Sauls's summary-judgment evidence filed on October 4, 2013, and granted their no-evidence motion for summary judgment on Sauls's claims for quantum meruit/unjust enrichment and breach of contract and on Sauls's apparent-authority theory of liability. On March 31, 2014, the trial court entered a supplemental summary-judgment order granting summary judgment on Sauls's claim for negligent misrepresentation and on Sauls's actual-authority theory of liability. That same day, the trial court also severed Sauls's counterclaims against MB and Colony Asset out of the original case, rendering the trial court's summary-judgment orders a final judgment on Sauls's counterclaims against MB and Colony Asset (the counterclaim case).

On April 4, 2014, the trial court granted Colony Asset a nonsuit of its fraudulent-lien claim against Sauls in the original case. Three days later, the trial court granted Sauls a nonsuit of his third-party claims against Baldwin and American in the original case. Sauls filed a motion for new trial in the original case, asking that the trial court vacate its order granting MB and Colony Asset's

7

no-evidence motion and arguing that he had produced "evidence required to raise a genuine issue of material fact on the essential elements of his counterclaims."[8] The motion was overruled by operation of law. *See* Tex. R. Civ. P. 329b(c). Sauls filed a notice of appeal in both the original case and the counterclaim case but stated he was only appealing from the January 29, 2014 summary-judgment order and the March 31, 2014 supplemental summary-judgment order, which were entered in the counterclaim case.

## II. THE ORIGINAL CASE (APPEAL NO. 02-14-00214-CV)

In his appeal from the original case, Sauls filed a motion to consolidate the appeal with his appeal from his counterclaim case. We granted the motion, consolidating the two appeals, but ordered that each appeal would continue to bear its respective case number. Sauls raises no arguments directed to any orders or rulings in the original case and specifically states that he challenges only the two summary-judgment orders entered in favor of MB and Colony Asset on Sauls's counterclaims against them. The title of Sauls's notice of appeal was "Counter-Plaintiff Hal Sauls's Notice of Appeal." Therefore, there is nothing to

---

[8]The only documents bearing the cause number for the counterclaim case are the order granting MB and Colony Asset's motion to sever, Sauls's notice of appeal, and Sauls's request for preparation of the clerk's record. Sauls did not include the cause number for his counterclaim case in his motion for new trial. No party asserts that we do not have jurisdiction over Sauls's appeal from the counterclaim case, and we conclude that Sauls's new-trial motion clearly referred to his counterclaim case, thereby extending the appellate timetable in the counterclaim case. *See Mueller v. Saravia*, 826 S.W.2d 608, 609 (Tex. 1992); *Espalin v. Children's Med. Ctr. of Dallas*, 27 S.W.3d 675, 681 (Tex. App.—Dallas 2000, no pet.).

review arising out of the original case because the counterclaim case as to MB and Colony Asset was severed out of it. We dismiss Sauls's appeal from the original case. *See* Tex. R. App. P. 43.2(f).

### III. THE COUNTERCLAIM CASE (APPEAL NO. 02-14-00208-CV)

In Sauls's appeal directed to the counterclaim case, he attacks the trial court's actions in sustaining MB and Colony Asset's objections to his summary-judgment evidence and in granting summary judgment in favor of MB and Colony Asset on his counterclaims.

### A. SCOPE OF REVIEW

In part of his sole issue, Sauls argues that the trial court abused its discretion in sustaining MB and Colony Asset's objections to much of his summary-judgment evidence. MB and Colony Asset respond that the objections were properly sustained but additionally argue that we may not consider the summary-judgment evidence Sauls attached to his October 10, 2013 response in our review of the trial court's summary judgment because it was filed less than seven days before the October 11, 2013 submission date. These arguments raise the appropriate scope of our review of the trial court's summary-judgment orders in Sauls's counterclaim case.

We pause here to note that Sauls repeatedly asserts in his opening brief that the "record as a whole" reveals more than a scintilla of probative evidence on his claims, barring summary judgment. In the absence of specific citations to competent evidence in the summary-judgment record supporting his argument,

9

we will not search the record on Sauls's behalf or address arguments Sauls failed to address either in the trial court or this court. *See Manautou v. Ebby Halliday Real Estate, Inc.*, No. 05-13-01035-CV, 2015 WL 870215, at *3 (Tex. App.—Dallas Feb. 27, 2015, no pet. h.) (mem. op.).

## 1. Late-Filed Evidence

We first address MB and Colony Asset's argument that we may not consider Sauls's late-filed evidence attached to his October 10, 2013 response to their objections.[9] Indeed, the scope of our summary-judgment review is restricted to the evidence properly before the trial court at the time of the hearing on the motion. *See* Tex. R. Civ. P. 166a(c). The trial court specifically stated that it only considered MB and Colony Asset's no-evidence motion, Sauls's October 4, 2013 response, and MB and Colony Asset's October 10, 2013 objections and reply (even though the objections and reply were, likewise, untimely filed under MB and Colony Asset's argument on appeal). The trial court did not consider Sauls's October 10, 2013 response to MB and Colony Asset's objections, and Sauls does not argue on appeal that the trial court abused its discretion by failing to consider it. Sauls focuses his appellate argument on the

---

[9]We note that this argument essentially only applies to consideration of Bata's 2010 deposition because MB's petition and nonsuit—to the extent Sauls believes they affirmatively negated MB's or Colony Asset's right to summary judgment—were on file at the time of the hearing. *See* Tex. R. Civ. P. 166a(c); Hon. David Hittner & Lynne Liberato, *Summary Judgments in Texas*, 47 S. Tex. L. Rev. 409, 449 (2006) (noting that although pleadings usually not competent summary-judgment evidence, "the defendant may use the plaintiff's pleadings to obtain a summary judgment when the pleadings affirmatively negate the plaintiff's claim").

10

trial court's rulings on MB and Colony Asset's objections to Sauls's summary-judgment evidence attached to his October 4, 2010 response.  Accordingly, we likewise will not consider Sauls's October 10, 2013 response and the evidence attached to it, i.e., excerpts from Bata's 2010 deposition.  *See, e.g., E.B.S. Enters., Inc. v. City of El Paso*, 347 S.W.3d 404, 408 (Tex. App.—El Paso 2011, pet. denied) ("[W]ithout some affirmative language in the record, we presume that the trial court did not consider Appellants' late-filed [summary-judgment] response. . . .  Accordingly, we cannot consider the same on appeal."); *K-Six Television, Inc. v. Santiago*, 75 S.W.3d 91, 96 (Tex. App.—San Antonio 2002, no pet.) ("The record must contain an affirmative indication that the trial court permitted the late filing of a response or the response is a nullity . . . and the response will not be considered on appeal."); *Neimes v. Ta*, 985 S.W.2d 132, 138 (Tex. App.—San Antonio 1998, pet. dism'd) (presuming trial court did not consider respondent's late-filed evidence in denying summary judgment even though movant failed to object to late-filed evidence); *cf. Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006) ("The court of appeals [in reviewing the trial court's grant of summary judgment] erred in considering Elwell's causation testimony from the bill of exceptions without having first determined, pursuant to properly assigned error, that the trial court erred in refusing to admit the testimony and reconsider its decision to exclude Elwell's causation opinions.").

11

## 2.  Evidence Struck by the Trial Court

Sauls attacks the trial court's ruling sustaining MB and Colony Asset's objections to his summary-judgment evidence attached to his October 4, 2013 response, which we review for an abuse of discretion.  *See Garner v. Fid. Bank, N.A.*, 244 S.W.3d 855, 859 (Tex. App.—Dallas 2008, no pet.).  Under a summary-judgment review, we may not consider struck portions of the record because such evidence is not a part of the summary-judgment record.  *See Trudy's Tex. Star, Inc. v. City of Austin*, 307 S.W.3d 894, 898 n.2 (Tex. App.—Austin 2010, no pet.); *Esty v. Beal Bank, S.S.B.*, 298 S.W.3d 280, 294 (Tex. App.—Dallas 2009, no pet.).  Therefore, if the trial court correctly sustained MB and Colony Asset's objections, that evidence cannot be part of our review of the trial court's no-evidence summary judgment because such evidence was not part of the record when the trial court ruled on the motion.  *See* W. Wendell Hall, *Standards of Review in Texas*, 34 St. Mary's L.J. 1, 83 (2002) ("The appellate court can consider the record *only as it existed at the time summary judgment was entered.*" (emphasis added)).

### a.  Sauls's June 16, 2008 affidavit

Sauls included in his June 16, 2008 affidavit—Exhibit A to his summary-judgment response—his statement that he was "competent to testify to the matters stated [in the affidavit] upon personal knowledge," which he "gained by virtue of being the Defendant/Counter-Plaintiff herein."  He further verified that his statements were "true and correct."  Sauls included six attachments to his

12

affidavit: (1) the development application; (2) the meeting minutes and sign-in sheet from the June 21, 2007 meeting; (3) the sign-in sheet from a similar meeting on June 28, 2007; (4) an email between Sauls and the engineering firm; (5) a July 30, 2007 letter from the city to Sauls about the project; and (6) a May 12, 2006 letter from the city to Bata.

MB and Colony Asset objected to Sauls's affidavit and five of the six attachments to that affidavit.[10] They asserted the following statements by Sauls were not based on his personal knowledge, unsubstantiated, conclusory, or speculative:[11] (1) that the development application "was signed by Bata"; (2) Sauls attended the June 21, 2007 meeting "at [the] personal request" of TDOT, Baldwin, and Bata; (3) Bata attended the meeting "representing Colony Asset"; (4) Bata signed in at a June 28, 2007 meeting between the engineering firm, American, Colony Asset, and TDOT as "representing Colony Asset"; (5) Sauls attended the June 28, 2007 meeting "at [the] personal request" of TDOT, Baldwin, and Bata; and (6) "On May 12, 2007, [Bata] had communications with [the city] showing Ownership."

---

[10]MB and Colony Asset did not specifically object to the development application.

[11]MB and Colony Asset raised these objections in the trial court and on appeal as a unitary argument—Sauls had no personal knowledge, which rendered the disputed statements conclusory, unsubstantiated, and speculative. We will do likewise.

13

An affidavit must "be made on personal knowledge, shall set forth facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Tex. R. Civ. P. 166a(f). Therefore, for a summary-judgment affidavit to have probative value, the affiant must swear that the facts in the affidavit reflect his personal knowledge. *Kerlin v. Airas*, 274 S.W.3d 666, 668 (Tex. 2008). But the mere recitation that the affidavit is based on personal knowledge is inadequate if the affidavit does not affirmatively show a factual basis for the knowledge. *Valenzuela v. State & Cnty. Mut. Fire Ins. Co.*, 317 S.W.3d 550, 553–54 (Tex. App.—Houston [14th Dist.] 2010, no pet.). In short, the affidavit must explain how the affiant has personal knowledge and must provide factual specificity such as place and time regarding its alleged facts. *Id.* A statement that does not provide underlying, supportive facts is conclusory and cannot serve as competent summary-judgment evidence. *La China v. Woodlands Operating Co.*, 417 SW.3d 516, 520 (Tex. App.—Houston [14th Dist.] 2013, no pet.). *See generally* Hon. David Hittner & Lynne Liberato, *Summary Judgment in Texas State and Federal Practice*, 46 Hous. L. Rev. 1379, 1438 (2010) ("The key is whether the affidavit clearly shows the affiant is testifying from personal knowledge.").

Sauls's statements regarding why he attended the June 21 and 28 meetings were within his personal knowledge as a party to the dispute as stated in his affidavit. *See* Tex. R. Civ. P. 166a(f); Tex. R. Evid. 602. They were not "unsubstantiated conclusory statement[s]" as BM and Colony Asset argued.

Sauls was clearly able to competently aver why he personally attended the meetings; thus, they were based on his personal knowledge and were not conclusory. *See, e.g.*, *Pipkin v. Kroger Tex., L.P.*, 383 S.W.3d 655, 670 (Tex. App.—Houston [14th Dist.] 2012, pet. denied); *Fairfield Fin. Grp., Inc v. Synnott*, 300 S.W.3d 316, 319 (Tex. App.—Austin 2009, no pet.); *Double Diamond, Inc. v. Van Tyne*, 109 S.W.3d 848, 853 (Tex. App.—Dallas 2003, no pet.); *Stucki v. Noble*, 963 S.W.2d 776, 780 (Tex. App.—San Antonio 1998, pet. denied). The trial court erred by striking these two statements, and we will consider them in reviewing the propriety of the summary judgment.[12]

MB and Colony Asset also objected to Sauls's statements that Bata signed in at the two meetings "representing Colony Asset" on the bases that they were "unsubstantiated conclusory statement[s]" and were supported by impermissible hearsay documents, i.e., the minutes and sign-in sheet from the June 21 meeting and the sign-in sheet from the June 28 meeting. Although Sauls attended the meetings, the minutes and sign-in sheets are business records that would require testimony or an affidavit of the records custodian or other qualified witness to allow their admission under a hearsay exception. *See* Tex. R. Evid. 803(6). Sauls asserts that his affidavit "indicates how he obtained these documents, they

---

[12]Because we ultimately conclude below that the trial court's summary judgment was not in error even considering the wrongly excluded summary-judgment evidence in our review, we need not proceed to a harm analysis at this point. *See* Tex. R. App. P. 44.1(a); Tex. R. Evid. 103(a); *Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241 (Tex. 2001).

15

were maintained by him as part of his work as an independent contractor," which establishes that the minutes and sign-in sheets were records of a regularly conducted activity and excepted from the hearsay rule. Sauls makes no such statements in his affidavit and merely avers that he attended the meetings and attaches a "true, accurate and correct copy" of the minutes and sign-in sheets. The minutes and sign-in sheets were inadmissible hearsay statements. Accordingly, Sauls's assertion that Bata appeared at the meetings on behalf of Colony Asset is unsupported and not based on Sauls's personal knowledge. *See Abrego v. Harvest Credit Mgmt. VII, LLC*, No. 13-09-00026-CV, 2010 WL 1718953, at *2–3 (Tex. App.—Corpus Christi Apr. 29, 2010, no pet.) (mem. op.); *Ramsey v. 2016 Main Owners Ass'n, Inc.*, No. A14-89-01177-CV, 1990 WL 181041, at *3 (Tex. App.—Houston [14th Dist.] Nov. 21, 1990, no writ) (not designated for publication); *cf. Royal Food & Gas, Inc. v. Petrofuels Corp.*, No. 09-07-001 CV, 2007 WL 2962886, at *3 (Tex. App.—Beaumont Oct. 11, 2007, no pet.) (mem. op.) ("The affidavit established facts to show that [affiant] . . . would have personal knowledge of the capacity in which he acted when he signed the document in question."). Further, the legal capacity by which Bata attended the meetings is an unsupported legal conclusion that is not competent summary-judgment evidence. *See Zuniga v. Navarro & Assocs., P.C.*, 158 S.W.3d 663, 671–72 (Tex. App.—Corpus Christi 2005, pet. denied); *Geiselman v. Cramer Fin. Grp., Inc.*, 965 S.W.2d 532, 537 (Tex. App.—Houston [14th Dist.] 1997, no pet.). The trial court did not abuse its discretion by striking

16

the statements regarding the legal import of Bata's presence at the meetings or the minutes and sign-in sheets.

The trial court also struck Sauls's statement that the development application, which was attached to his affidavit, was signed by Bata. MB and Colony Asset objected to this statement because Sauls did not "state how he is able to testify that . . . Bata actually signed" the development application, rendering the statement speculative, unsubstantiated, and conclusory. Sauls stated that his personal knowledge of the "matters" in his affidavit was "gained by virtue of being the Defendant/Counter-Plaintiff herein." As we previously stated, the mere recitation of personal knowledge will be inadequate if the affidavit does not affirmatively show the bases for that knowledge. Here, Sauls's status as a party to the original case and the counterclaim case gives him no affirmative personal knowledge that Bata personally signed the development application. *See Spiro v. State*, No. 03-01-00359-CV, 2002 WL 990351, at *3 (Tex. App.— Austin May 16, 2002, no pet.) (not designated for publication); *cf. Hinojosa Auto Body & Paint, Inc. v. Finishmaster, Inc.*, No. 03-08-00361-CV, 2008 WL 5210871, at *6 (Tex. App.—Austin Dec. 12, 2008, no pet.) (mem. op.) (holding party's attorney's affidavit verifying pleading must be based on personal knowledge of facts, not on his status as counsel). Although Sauls stated that he filled out the top portion of the development application, he does not state that he did so at the same time Bata signed the bottom portion or how he otherwise knew Bata was the signatory to the development application. Further, the signature portion of

17

the development application provided that it was to be signed by the "property owner or applicant"; therefore, the fact that Bata was listed as the applicant does not automatically mean he was the signatory. The trial court did not err by striking this statement; however, the signed and notarized development application itself was before the trial court on summary judgment because MB and Colony Asset did not object to this attachment (attachment "CP-1") to Sauls's June 16, 2008 affidavit.[13]

MB and Colony Asset's final objection to Sauls's affidavit was directed to his statement that MB communicated with the city about the Denton County projects, which "show[ed] Ownership." To support this statement, Sauls attached two 2006 letters from the city to Bata, discussing the box-culvert and superintendent projects. MB and Colony Asset objected because Sauls lacked personal knowledge, rendering the statement conclusory. Indeed, the legal import of the letters from the city to Bata is not within Sauls's personal knowledge and is an unsubstantiated legal conclusion. *See Dallas Cent. Appraisal Dist. v. Mission Aire IV, L.P.*, 279 S.W.3d 471, 479 (Tex. App.—Dallas 2009, pet. denied). The trial court did not err by striking this statement.

MB and Colony Asset objected to three other affidavit attachments—an email between Sauls and the engineering firm and two letters from the city about

---

[13]As we later discuss, MB and Colony Asset objected to the same development application attached as Exhibit F to Sauls's summary-judgment response.

18

the project—on the grounds that they constituted hearsay. Sauls does not address whether the attachments constituted inadmissible hearsay and focuses solely on whether the attachments were properly authenticated under rule 901. *See H2O Solutions, Ltd. v. PM Realty Grp., LP*, 438 S.W.3d 606, 623 n.6 (Tex. App.—Houston [1st Dist.] 2014, pet. denied) (recognizing "[a]uthenticity of a document and admissibility of that document under an exception to the hearsay rule are separate inquiries"). We cannot conclude that the trial court abused its discretion by striking these attachments in the absence of any argument supporting such a conclusion. *See Welch v. Eddington*, No. 14-03-01303-CV, 2005 WL 43304, at *1 (Tex. App.—Houston [14th Dist.] Jan. 11, 2005, pet. denied) (mem. op.) (citing *Owens-Corning Fiberglas Corp. v. Malone*, 972 S.W.2d 35, 43 (Tex. 1998)). We will not consider the objected-to attachments to Sauls's June 16, 2008 affidavit in our summary-judgment review.

### b. Sauls's July 18, 2008 affidavit

Sauls next argues that the trial court abused its discretion by striking portions of his July 18, 2008 affidavit, which was attached as Exhibit D to his summary-judgment response. Sauls stated that he gained his knowledge of the "statements" sworn to in the affidavit by virtue of his status as a party in the litigation and because he "actively participated in all of the transactions discussed."

MB and Colony Asset objected to Sauls's two statements that Baldwin "represented that he was acting in his capacity as agent for or general contractor

19

for" MB and Colony Asset during negotiations and subsequent meetings about the projects. Their main argument was that Sauls's affidavit was a sham affidavit, which could not be used to raise a fact issue on summary judgment. However, this court does not apply the sham-affidavit doctrine and continues to adhere to the principle that "when conflicting inferences may be drawn between a party's summary judgment affidavit and his deposition on matters of material fact, a fact issue is presented." *Davis v. City of Grapevine*, 188 S.W.3d 748, 756 (Tex. App.—Fort Worth 2006, pet. denied). MB and Colony Asset argued in the alternative that the statements were "unsubstantiated conclusory statements, improper legal conclusions, and/or impermissible hearsay." We disagree with their alternative arguments because these matters were within Sauls's personal knowledge established in his affidavit. Thus, the trial court erred by striking these statements regarding what Baldwin represented to Sauls, and we will consider them in our summary-judgment review.

MB and Colony Asset also challenged Sauls's statement that the representations Baldwin made to Sauls in Bata's presence were "acknowledged by and acquiesced to by . . . Bata." They asserted this statement was conclusory, an improper legal conclusion, and hearsay.[14] We agree that Sauls failed to state the facts supporting his conclusion that Bata acknowledged and acquiesced to Baldwin's representations that he was MB's and Colony Asset's

---

[14]They also argued that this statement was part of a sham affidavit, which we have rejected.

20

agent. Sauls did not state whether Bata heard Baldwin's assertion and merely stood mute, nodded his head in agreement, or otherwise informed Sauls that he agreed that Baldwin was Colony Asset's and MB's agent. This failure renders Sauls statement regarding Bata's acquiescence and acknowledgement unsupported and conclusory. *See Davis v. Dillard's Dep't Store, Inc.*, No. 11-06-00027-CV, 2008 WL 1903794, at *2 (Tex. App.—Eastland May 1, 2008, no pet.) (mem. op.). The trial court did not abuse its discretion by striking this portion of Sauls's affidavit.

MB and Colony Asset's final attack on this affidavit focused on Sauls's statement that the meeting minutes were from meetings he "attended along with . . . Baldwin and . . . Bata concerning the services that I was hired and was performing on behalf of [Bata, Baldwin, and American] on and concerning [the Denton County projects]." MB and Colony Asset argued that this statement was conclusory because it was based on inadmissible hearsay—the minutes. As we previously discussed, the minutes were inadmissible hearsay; thus, Sauls's factual statement about the meetings premised on those minutes was an unsupported, conclusory assertion and was properly struck by the trial court. *See Southland Corp. v. Lewis*, 940 S.W.2d 83, 85 (Tex. 1997).

### c. Contractual documents and the development application

As we previously discussed, Sauls attached a copy of the development application to his June 16, 2008 affidavit. Sauls attached another copy of the development application as a separate exhibit—Exhibit F—to his summary-

21

judgment response. MB and Colony Asset objected to the separate exhibit attached to Sauls's response on the bases that it was hearsay and "because no predicate has been laid to prove up those documents." The development application attached to Sauls's June 16, 2008 affidavit was not objected to and, presumably, was considered by the trial court. Therefore, we need not address Sauls's argument that the trial court erred by striking the development application that was attached to his summary-judgment response as Exhibit F.

Sauls also attached to his response "Contractual Documents" between Bata and Baldwin. MB and Colony Asset objected to this attachment because the documents were not properly authenticated and constituted inadmissible hearsay.[15] Sauls argues that the contractual documents are self-authenticating and do not require extrinsic evidence to authenticate them. *See* Tex. R. Evid. 902(8). Some of the attached contractual documents were notarized, were self-authenticated, and would have been properly considered by the trial court if MB and Colony Asset had solely objected to the documents on the basis of authentication.[16] *See* David A. Schlueter & Johnathan D. Schlueter, *Texas Rules*

---

[15]Importantly, MB and Colony Asset filed a verified answer and specifically denied that an enforceable contract existed between them and American or Baldwin. *See* Tex. R. Civ. P. 93(7). Accordingly, any contracts relied upon by Sauls to show American's or Baldwin's formal involvement with the project were not automatically "fully proved." *Id.*

[16]The notarized documents were (1) American's December 31, 2007, March 7, 2008, and January 30, 2008 applications for payment from Colony Asset for American's work on the Denton County projects, which were signed by Baldwin and (2) American's February 15, 2008 and March 13, 2008 waivers and

*of Evidence Manual* § 902.02[9][b] (9th ed. 2012). But even though some of the documents were properly authenticated, they are not immune from a separate hearsay objection. *See H2O Solutions*, 438 S.W.3d at 623 n.6. Sauls did not address the hearsay nature of any of the contractual documents, relying solely on the fact that the contractual documents were self-authenticated. We cannot conclude that the trial court abused its discretion by striking the contractual documents based on Sauls's failure to counter the hearsay objection, which was an independent basis upon which the trial court could have struck the documents. *See Vodicka v. N. Am. Title Co.*, No. 05-13-00126-CV, 2014 WL 348530, at *3 (Tex. App.—Dallas Jan. 30, 2014, no pet.) (mem. op.) (recognizing failure to address on appeal each basis upon which affidavit was challenged in the trial court waives any error in the trial court's exclusion of the affidavit). Like the trial court, we will not consider the contractual documents in our summary-judgment review.

## B. STANDARD OF REVIEW

After an adequate time for discovery, the party without the burden of proof may, without presenting evidence, move for summary judgment on the ground that there is no evidence to support an essential element of the nonmovant's claim or defense. Tex. R. Civ. P. 166a(i). The motion must specifically state the elements for which there is no evidence. *Id.*; *Timpte Indus., Inc. v. Gish*, 286

releases of lien to Colony Asset regarding the Denton County projects, which were signed by Baldwin as American's "Authorized Agent."

23

S.W.3d 306, 310 (Tex. 2009). The trial court must grant the motion unless the nonmovant produces summary judgment evidence that raises a genuine issue of material fact. *See* Tex. R. Civ. P. 166a(i) & cmt.; *Hamilton v. Wilson*, 249 S.W.3d 425, 426 (Tex. 2008).

When reviewing a no-evidence summary judgment, we examine the summary-judgment evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the motion. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006). We review a no-evidence summary judgment for evidence that would enable reasonable and fair-minded jurors to differ in their conclusions. *Hamilton*, 249 S.W.3d at 426 (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 822 (Tex. 2005)). If the nonmovant brings forward more than a scintilla of probative evidence that raises a genuine issue of material fact, then a no-evidence summary judgment is not proper. *Smith v. O'Donnell*, 288 S.W.3d 417, 424 (Tex. 2009); *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003), *cert. denied*, 541 U.S. 1030 (2004).

### C. APPLICATION

#### 1. Breach of Contract: Denton County and Collin County Projects

Sauls raised a breach-of-contract claim against Colony Asset, Baldwin, and American regarding his oral contract with Baldwin and American for the box-culvert project and the superintendent project (collectively, the Denton County projects). In seeking recovery against Colony Asset, Sauls relied on American and Baldwin's actual and apparent authority to bind Colony Asset as Colony

24

Asset's general contractor. Sauls also raised a breach-of-contract claim against MB, Baldwin, and American regarding his contract with Baldwin and American for the Collin County project, relying on American's and Baldwin's actual and apparent authority to bind MB. Sauls asserted that he and American (as MB's "agent and general contractor") signed a contract for the Collin County project on June 28, 2007. Therefore, Sauls cannot recover for breach of contract against Colony Asset or MB absent American's or Baldwin's actual or apparent authority to bind MB or Colony Asset.[17]

### a. Actual authority

Actual authority, whether express or implied, arises when a principal intentionally confers authority on an agent, intentionally allows the agent to believe he possesses authority, or allows the agent to believe he possesses authority by want of due care. *2616 S. Loop L.L.C. v. Health Source Home Care, Inc.*, 201 S.W.3d 349, 356 (Tex. App.—Houston [14th Dist.] 2006, no pet.). Therefore to recover under actual authority, Sauls must show that (1) MB and Colony Asset intentionally conferred authority on American and Baldwin to act as

---

[17]We note that MB and Colony Asset's sole argument on appeal in support of the trial court's summary judgment on Sauls's breach-of-contract claim is that the evidence Sauls relied on to raise a fact issue—Sauls's July 18, 2008 affidavit—was incompetent summary-judgment evidence; therefore, they were entitled to summary judgment. We have concluded that several of the disputed statements were competent, which belies their argument. However, in an abundance of caution, we will address actual and apparent authority because the parties and the trial court treated them as separate and distinct theories of recovery from Sauls's breach-of-contract claim.

25

their agent or (2) MB and Colony Asset intentionally or by a lack of due care allowed Sauls to believe that American and Baldwin possessed authority to act as MB's or Colony Asset's agent. *See IRA Res., Inc. v. Griego*, 221 S.W.3d 592, 597 (Tex. 2007); *2616 Loop*, 201 SW.3d at 356. In determining whether a party had actual authority to act for another, we look to the words and conduct by the principal to the alleged agent regarding the alleged agent's authority to act for the principal and the facts and circumstances surrounding the transaction in question. *Walker Ins. Servs. v. Bottle Rock Power Corp.*, 108 S.W.3d 538, 549–50 (Tex. App.—Houston [14th Dist.] 2003, no pet.).

The summary-judgment evidence does not raise a genuine issue of material fact that Colony Asset or MB intentionally or by lack of due care conferred authority on Baldwin or American to hire subcontractors such as Sauls for any of the projects. There is no evidence of any words or conduct by MB or Colony Asset directed to Baldwin and American to indicate they had the actual authority to hire subcontractors. Regarding the Collin County project, although the contract between Sauls and American was signed on June 28, 2007, there is no evidence of any actual authority MB might have granted American or Baldwin regarding the Collin County project. Bata stated in his affidavit that MB had "never authorized American . . ., Baldwin or Sauls to act as an agent, fiduciary or other representative of [MB] in any respect."

Similarly, the summary-judgment evidence does not show that Colony Asset conferred authority on Baldwin or American to hire subcontractors for the

26

Denton County projects. Sauls stated in his affidavit that the services he performed on the Denton County projects occurred between April 15 and August 28, 2007. Bata stated in his affidavit that Colony Asset had been the owner of the Denton County property since 2004, not MB, and that neither MB nor Colony Asset expressly contracted with American or Baldwin during the time Sauls alleged he performed work on the Denton County projects. Bata further averred that Colony Asset did not authorize American or Baldwin to act as Colony Asset's "agent, fiduciary, or other representative" on the Denton County projects. Sauls admitted in his deposition that Baldwin did not tell Sauls that Baldwin or American had a contract with the owner of the Denton County property to be the general contractor.

Bata's presence at meetings concerning the Denton County projects does not raise a fact issue that Colony Asset had authorized Baldwin or American to hire subcontractors. Further, Baldwin's assertion to Sauls that he was Colony Asset's general contractor does not establish any actions by Colony Asset to Baldwin or American conferring actual authority. Sauls did not raise a genuine issue of material fact that Colony Asset or MB granted actual authority to American or Baldwin on any of the projects to hire subcontractors. *See, e.g.*, *Expro Ams., LLC v. Sanguine Gas Exploration, LLC*, 351 S.W.3d 915, 920–22 (Tex. App.—Houston [14th Dist.] 2011, pet. denied); *Vinsko v. ITT Educ. Servs., Inc.*, No. 05-02-00894-CV, 2003 WL 1648173, at *3 (Tex. App.—Dallas Mar. 31, 2003, pet. denied) (mem. op.); *Plantation Prod. Props., L.L.C. v. Meeks*, No. 10-

27

02-00029-CV, 2004 WL 2005445, at *2–3 (Tex. App.—Waco Sept. 8, 2004, no pet.) (mem. op.); *cf. Talley Constr. Co. v. Rodriguez*, No. 01-03-01147-CV, 2006 WL 908180, at *8 (Tex. App.—Houston [1st Dist.] Apr. 6, 2006, no pet.) (mem. op. on reh'g) (holding evidence sufficient to support fact-finder's conclusion that superintendent for construction company possessed actual authority to hire subcontractors on company's behalf because "business files" showed superintendent had that authority).

### b. Apparent authority

A party seeking to charge the principal for the conduct of an agent based on apparent authority must show either (1) that the principal knowingly permitted the agent to hold himself out as having authority or (2) conduct by the principal that would lead a reasonably prudent person to believe the agent had the authority he purported to exercise. *Biggs v. U.S. Fire Ins. Co.*, 611 S.W.2d 624, 629 (Tex. 1981); *Ebner v. First State Bank*, 27 S.W.3d 287, 300 (Tex. App.—Austin 2000, pet. denied); 20A Elizabeth S. Miller & Robert A. Ragazzo, *Texas Practice Series: Business Organizations* § 35:8 (2014). Apparent authority, which is based on estoppel, is determined by looking to the acts of the principal and ascertaining whether that conduct would lead a reasonably prudent person using diligence and discretion to suppose the agent had the authority the agent purported to exercise. *Gaines v. Kelly*, 235 S.W.3d 179, 182–83 (Tex. 2007). Thus, we look to the conduct of the principal and the reasonableness of the third party's assumptions about that authority. *Id.* at 183. Unlike actual authority,

which is created by the principal's conduct toward the agent, apparent authority is created by the principal's conduct toward a third party. *Plantation Prod.*, 2004 WL 2005445, at \*3. "A mere representation by an agent that he possesses the requisite authority is not sufficient" to establish apparent authority. 20A Miller & Ragazzo, *supra*, § 35:8. Instead, a prerequisite to a proper finding of apparent authority is evidence of conduct by the principal relied on by the third party that would lead a reasonably prudent person to believe the agent had the authority to act as an agent. *See Baptist Mem'l Hosp. Sys. v. Sampson*, 969 S.W.2d 945, 949 (Tex. 1998) (quoting *Ames v. Great S. Bank*, 672 S.W.2d 447, 450 (Tex. 1984)).

### (1) Collin County project

Sauls failed to produce any evidence raising a genuine issue of material fact regarding conduct by MB conferring apparent authority on American or Baldwin that was reasonably relied on by Sauls regarding the Collin County project. Each of Sauls's factual, affidavit statements regarding statements or actions by Baldwin or Bata, attempting to show apparent authority conferred on American or Baldwin by MB, referred solely to the Denton County projects and did not relate to the Collin County project. There is no record evidence of any representation or action by MB to Sauls regarding the Collin County project. Therefore, the trial court correctly granted summary judgment in favor of MB on Sauls's breach-of-contract counterclaim against MB regarding the Collin County project.

29

## (2) Denton County projects

Likewise, Sauls failed to produce any evidence raising a genuine issue of material fact regarding conduct by Colony Asset conferring apparent authority on American or Baldwin that was reasonably relied on by Sauls regarding the Denton County projects. Sauls stated in his affidavit that when Baldwin hired Sauls to work on the Denton County projects, Baldwin, who was the president of American, told Sauls that he was the general contractor for the Denton County projects and was acting as Colony Asset's agent. After April 2007, Sauls attended "several" meetings with Baldwin and Bata about the Denton County projects. Sauls averred that at each meeting, Baldwin represented to Sauls that he was acting as the agent of MB, Colony Asset, and Bata. The development application for the Denton County projects, which was signed on July 5, 2007, showed that Bata was the applicant and that Colony Asset was the owner of the property. The "Key Contact[s]" listed on the development application were Bata and Baldwin. Sauls asserted that he completed the project-information portion of the development application.

At first glance, this evidence read as a whole gives the impression that Colony Asset conferred apparent authority on Baldwin and American. But the supreme court has clearly held that the operative fact, and the one we must focus on in determining apparent authority, is any action or communication by the principal to the third party. *Gaines*, 235 S.W.3d at 182. In short, we look only at what Colony Asset represented to Sauls, not what Baldwin or American

30

represented to Sauls. *See id.* at 182–83. Any evidence that Bata, Colony Asset's president, attended meetings regarding the Denton County projects or that Baldwin represented to Sauls that American was Colony Asset's general contractor for the Denton County projects does not raise a genuine issue of fact regarding apparent authority. Sauls asserted in the trial court that he relied on Bata's signature on the development application "as a representation that Baldwin/Contractors could authorize work as general contractors." But other than Sauls's conclusory statement that Bata signed the development application, which was properly struck by the trial court, there is no evidence that it was signed by Bata. Indeed, the signature is illegible, and the signatory did not print a name under the signature. Further, it would not be reasonable for Sauls to rely on a signature on the development application to indicate that the signatory had conferred apparent authority on Baldwin or American to hire subcontractors.

We conclude the summary-judgment evidence did not raise a genuine issue of material fact on the question of Baldwin's or American's apparent authority to act on behalf of Colony Asset regarding the Denton County projects. Sauls produced no evidence that the principal—Colony Asset or Bata—acted in such a way that Sauls would believe that the purported agent—American or Baldwin—had the authority to act on the principal's behalf. *See, e.g., id.* at 182–85; *Disney Enters., Inc. v. Esprit Fin., Inc.*, 981 S.W.2d 25, 30 (Tex. App.—San Antonio 1998, pet. dism'd w.o.j.). *See generally Ins. Co. of N. Am. v. Morris*, 981 S.W.2d 667, 672 (Tex. 1998) (holding courts look to "acts of participation,

31

knowledge, or acquiescence by the principal" to determine apparent authority). All of the representations and actions relied on by Sauls to show apparent authority flowed from American or Baldwin to Sauls and did not involve any knowing action or inaction by Colony Asset or Bata to Sauls indicating that American or Baldwin had the apparent authority to hire subcontractors for the Denton County projects. *See Coleman v. Klopckner & Co. AG*, 180 S.W.3d 577, 592 (Tex. App.—Houston [14th Dist.] 2005, no pet.). The summary-judgment evidence did not show that Colony Asset or Bata either knowingly permitted American or Baldwin to hold themselves out as Colony Asset's agent or engaged in conduct such that Sauls would reasonably believe American or Baldwin was Colony Asset's authorized agent. This is fatal to Sauls's assertion of apparent authority, and the trial court correctly granted Colony Asset summary judgment on this basis.

### 2. Negligent Misrepresentation: Denton County Projects

Sauls alleged that Colony Asset, through Bata as its president, negligently misrepresented that Baldwin "was an authorized agent" for Colony Asset and that it had approved Sauls being hired for the Denton County projects. MB and Colony Asset argued in their summary-judgment motion that there was no genuine issue of material fact regarding each element of Sauls's negligent-misrepresentation claim against Colony Asset. On appeal, Sauls raises no argument and points to no probative evidence raising a genuine issue of material fact on his negligent-misrepresentation claim. Indeed, he only argues there is

32

"more than a scintilla of evidence . . . regarding his breach of contract, quantum meruit/unjust enrichment, and agency claims." We will not make Sauls's arguments for him or search the record for evidence in opposition to Colony Asset's summary-judgment arguments; thus, we conclude the trial court did not err by granting summary judgment on Sauls's negligent-misrepresentation counterclaim. *See Dennis v. First State Bank*, 989 S.W.2d 22, 28 (Tex. App.—Fort Worth 1998, no pet.).

### 3. Quantum Meruit: Denton County Projects[18]

Quantum meruit is an equitable remedy based on an implied promise to pay for benefits received and is available when nonpayment for services rendered would result in an unjust enrichment to the benefitted party. *Vortt Exploration Co. v. Chevron USA, Inc.*, 787 S.W.2d 942, 944 (Tex. 1990); *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 550 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). To prevail on a quantum-meruit claim resulting in an unjust enrichment, Sauls was required to produce evidence that (1) he provided valuable services or materials for the Denton County projects, (2) he provided the

---

[18]Although Sauls seemed to allege this claim also against MB regarding the Collin County project, he raised only the amounts due for the Denton County project in his counterclaim and later specifically limited his quantum-meruit and negligent-misrepresentation claims to the Denton County projects. Further, quantum meruit cannot be sought if the plaintiff had an express contract, such as the contract between Sauls and American for the Collin County project, even if the plaintiff seeks recovery from a third party foreign to the original contract but who benefitted from its performance. *Christus Health v. Quality Infusion Care, Inc.*, 359 S.W.3d 719, 723–25 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (op. on reh'g).

services or materials for Colony Asset's benefit, (3) Colony Asset accepted the services or materials, and (4) Colony Asset had reasonable notice that Sauls expected compensation for the services or materials. *See Heldenfels Bros. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992); *Carr v. Austin Forty*, 744 S.W.2d 267, 273 (Tex. App.—Austin 1987, writ denied).

Colony Asset argued judgment as a matter of law was appropriate regarding Sauls's claim for quantum meruit because there was no evidence that the alleged services or materials provided by Sauls for the Denton County projects were valuable and conferred a benefit on Colony Asset, that Colony Asset accepted Sauls's services or materials, or that Colony Asset had reasonable notice that Sauls expected compensation from Colony Asset for the services or materials. Colony Asset did not argue that there was no evidence of the second element.

Sauls stated in his affidavit that he performed "substantial services on and for the benefit" of the Denton County projects between April 15, 2007 and August 28, 2007. Sauls stated at his deposition, which was attached to MB and Colony Asset's October 10, 2013 objections and reply, that he had not been fully paid for his services and that he believed Colony Asset, American, and Baldwin were responsible for the unpaid amounts on the Denton County projects. Attached to Sauls's M&M lien was Sauls's August 24, 2007 invoice, showing that American and Baldwin owed Sauls $17,601.41 for his work on the Denton County projects. Sauls averred in the M&M lien that he gave American and

34

Colony Asset notice of the past due amount on October 15, 2007, approximately one month before he filed the M&M lien.

We conclude Sauls failed to raise a genuine issue of material fact that Colony Asset had reasonable notice that Sauls expected compensation for the services he provided on the Denton County projects at the time those services were provided.[19] The notice element focuses on what Colony Asset knew or should have known at the time the services were accepted. *See Myrex Indus.*, 126 S.W.3d at 550. In other words, Sauls must show that the services he provided were accepted by Colony Asset under such circumstances as reasonably notified Colony Asset that Sauls, in performing such services, expected to be paid by Colony Asset. *See Heldenfels*, 832 S.W.2d at 41. Sauls stated during his deposition that he expected to be paid by Baldwin for his work on the Denton County projects. There is no evidence that at the time Sauls worked on the Denton County projects—May through August 2007—Sauls expected to be paid by Colony Asset or that Colony Asset knew Sauls expected payment from Colony Asset.[20] *See KUV Partners, LLC v. Fares*, No. 02-09-

---

[19]Sauls attempted to rely on his interrogatory answers to raise a genuine issue of material fact in the trial court on his quantum-meruit counterclaim. But Sauls may not use his own interrogatory answers in his favor to defeat MB and Colony Asset's summary-judgment motion. *See* Tex. R. Civ. P. 197.3; *Morgan v. Anthony*, 27 S.W.3d 928, 929 (Tex. 2000) (citing *Yates v. Fisher*, 988 S.W.2d 730, 731 (Tex. 1998)).

[20]Sauls points to his invoice that was sent to American and Baldwin as evidence that Colony Asset knew Sauls expected to be paid by Colony Asset.

00246-CV, 2011 WL 944453, at *16–17 (Tex. App.—Fort Worth Mar. 17, 2011, pet. denied) (mem. op. on reh'g); *Myrex Indus.*, 126 S.W.3d at 551–52; *Securiteestor, Inc. v. Stewart Title Guar. Co.*, No. 01-95-00360-CV, 1995 WL 655958, at *2 (Tex. App.—Houston [1st Dist.] Nov. 2, 1995, no writ) (not designated for publication). The trial court correctly granted summary judgment on Sauls's quantum-meruit claim.

## IV. CONCLUSION

Because Sauls raises no issues directed to the trial court's actions in the original case, we dismiss that appeal, i.e., appeal number 02-14-00214-CV. *See* Tex. R. App. P. 43.2(f). We sustain in part and overrule in part Sauls's first issue, concluding that the trial court erred in some respects in its rulings on MB and Colony Asset's summary-judgment objections. To the extent the trial court erred, we considered that evidence in our summary-judgment review. However, we overrule Sauls's second issue directed to the trial court's summary-judgment orders, concluding that Sauls failed to produce the quantum of evidence necessary to raise a genuine issue of material fact and, thereby, defeat Colony Asset and MB's no-evidence motion for summary judgment. Accordingly, in the counterclaim case (appeal number 02-14-00208-CV), we affirm the trial court's summary-judgment orders. *See* Tex. R. App. P. 43.2(a).

---

Sauls states in his reply that the invoice was "subsequently sent to Bata." We can find no evidence to support this statement, and Sauls points to none.

/s/ Lee Gabriel

LEE GABRIEL
JUSTICE

PANEL:  LIVINGSTON, C.J.; MEIER and GABRIEL, JJ.

DELIVERED:  June 11, 2015