MYREX INDUSTRIES,
INC., Appellant,

v.

David ORTOLON, Appellee.

No. 14–02–01129–CV.

Court of Appeals of Texas,
Houston (14th Dist.).

Nov. 18, 2003.

Rehearing Overruled En Banc
Feb. 26, 2004.

Deborah Heaton McElvaney, Houston, for appellant.

Sean F. Greenwood, Howard Lynn Steele, Houston, for appellee.

Panel consists of Chief Justice BRISTER and Justices ANDERSON and SEYMORE.

## OPINION

CHARLES W. SEYMORE, Justice.

Appellant, Myrex Industries, Inc., appeals a judgment in favor of appellee, David Ortolon, on his quantum meruit claim to recover commissions allegedly earned while employed by Myrex. Myrex contends that Ortolon (1) is precluded from presenting a quantum meruit claim; (2) failed to prove all elements of his claim; (3) used an incorrect measure of damages; and (4) the damages awarded are excessive. We reverse and render.

### I. BACKGROUND

Myrex is a steel fabricator for various industries. Myrex hired Ortolon as an estimator in November 1998. Ortolon's duties included selling projects by estimating the costs involved and preparing bid proposals for customers. He also had duties after he sold a project including managing the project, interacting with the customer, writing purchase orders, and addressing change orders. Ortolon was paid a salary, plus commissions under Myrex's "incentive bonus plan." Under this plan, an estimator is paid a commission of five percent of the net profit on the projects he sells. However, an estimator is not paid the commission until a project closes. A project closes when Myrex collects final payment from the customer and makes adjustments for job costs. Further, if an estimator's projects that close within a quarter maintain a certain profit margin, he is paid an additional five percent.

Ortolon resigned from Myrex in March 2001. At that time, he had been paid commissions for his projects that had closed. However, there were certain projects he had sold that had not yet closed. Despite his demand, Myrex refused to pay him commissions on these projects. Myrex asserted it does not pay commissions on projects that close after an estimator leaves the company.

Ortolon sued Myrex for breach of contract and, alternatively, quantum meruit. The jury found in Myrex's favor on the breach of contract claim because it found no agreement that Myrex would pay Ortolon commissions for projects that closed after his resignation.[1] However, the jury returned a verdict for Ortolon on his quantum meruit claim and awarded him $64,631.93. The trial court entered judgment for Ortolon in the amount of $64,631.93 plus prejudgment interest, court costs, and postjudgment interest. This appeal followed.

### II. ANALYSIS

Myrex presents three issues for review. In subpart (c) of its first issue, Myrex contends Ortolon is not entitled to recover in quantum meruit because he failed to prove all elements of a quantum meruit claim. We will address this contention first because it is dispositive of this appeal.[2]

---

1. However, the jury also found no agreement that Ortolon would *not* be paid for these projects.

2. In subparts (a) and (b) of its first issue, as well as its second issue, Myrex contends Ortolon is not entitled to recover in quantum meruit because his employment contract cov-

■ *Quantum meruit* is an equitable remedy based upon an implied promise to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi,* 832 S.W.2d 39, 41 (Tex.1992). To recover in quantum meruit, a claimant must prove (1) valuable services were rendered or materials furnished; (2) for the person sought to be charged; (3) which services and materials were accepted by the person sought to be charged; (4) under such circumstances as reasonably notified the person sought to be charged that the plaintiff in performing such services was expecting to be paid by the person sought to be charged. *Id.*

■ Myrex contends Ortolon's work on the disputed projects was *not* accepted by Myrex under such circumstances that reasonably notified Myrex that Ortolon was expecting to be paid commissions. Specifically, Myrex attacks the legal and factual sufficiency of the evidence supporting the jury's "yes" answer to the following question:

### Question 11

Did Ortolon perform compensable work for Myrex for which Ortolon was not paid?

You are instructed when answering this question that—

One party performs compensable work if valuable services are rendered or materials furnished for another party who knowingly accepts and uses them and if the party accepting them should know that the performing party expects to be paid for the work.[3]

■ When a party challenges the legal sufficiency of the evidence supporting an adverse finding on an issue on which it does not have the burden of proof, that party must demonstrate on appeal that there is no evidence to support the adverse finding. *Price Pfister, Inc. v. Moore & Kimmey, Inc.,* 48 S.W.3d 341, 347 (Tex. App.-Houston [14th Dist.] 2001, pet. denied) (citing *Croucher v. Croucher,* 660 S.W.2d 55, 58 (Tex.1983)). We consider all the evidence in the light most favorable to the jury's verdict, indulging every reasonable inference in favor of the prevailing party. *Id.* (citing *Associated Indem. Corp. v. CAT Contracting, Inc.,* 964 S.W.2d 276, 285–86 (Tex.1998)). We will sustain a legal insufficiency point when (a) there is a complete absence of evidence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence conclusively establishes

ered the disputed work, and the parties agreed his commissions would terminate when he left the company. *See Black Lake Pipe Line Co. v. Union Const. Co., Inc.,* 538 S.W.2d 80, 86 (Tex.1976) (precluding quantum meruit recovery when express contract covers the services furnished). Ortolon responds that Myrex waived its "express contract" defense by failing to request a jury question. He further disputes his employment arrangement was even a contract, much less an express contract covering payment of commissions for the disputed projects. *See Fortune Prod. Co. v. Conoco, Inc.,* 52 S.W.3d 671, 684 (Tex.2000) (holding party disputing quantum meruit claim must secure finding that express contract covers subject matter of

the dispute when existence of or terms of a contract are in doubt). However, we need not address these issues because Ortolon failed to prove all elements of a quantum meruit claim.

3. Ortolon asserts Myrex waived this issue because in its argument, it failed to specifically state it is attacking the legal and factual sufficiency of the evidence. However, earlier in its brief, Myrex cited the applicable standards for legal and factual sufficiency attacks and made clear it is attacking the sufficiency of the evidence on this jury finding. Therefore, we will consider its issue.

the opposite of a vital fact. *Id.* (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997)).

When Ortolon tendered his resignation, he told his supervisor, Kelli Boze, he expected to be paid commissions for his projects that had not yet closed. Ortolon later sent a letter to Jim Moffa, Myrex's president, demanding payment for these projects. Ortolon concedes these demands are the only evidence that Myrex knew Ortolon expected to be paid commissions for the disputed projects. However, demands at the time of, and after, his resignation do not satisfy the "notice" element of quantum meruit.

The "notice" element focuses on what the recipient of the services knew or should have known at the time the services were accepted. The claimant must prove the services *"were accepted* by the person sought to be charged ... *under such circumstances as reasonably notified* the person ... that the plaintiff in performing such services was expecting to be paid." *Heldenfels*, 832 S.W.2d at 41 (emphasis added).[4] Our review of the record reveals a complete absence of evidence that Myrex knew or should have known at the time Ortolon sold the disputed projects that he expected to be paid commissions even if the projects closed after his employment ended.

In fact, the evidence conclusively establishes the opposite—Myrex did *not* know at the time Ortolon sold the disputed projects that he expected to be paid commissions even if these projects closed after his employment ended. Moffa and Boze both testified that under the incentive bonus plan, Myrex does not pay commissions on projects that close after an estimator leaves the company. This policy was in place when Ortolon was hired. Boze also testified Myrex's policy is standard for the steel fabrication industry. Moffa further testified the incentive bonus plan was enacted to motivate estimators to see their projects through until "the bitter end." He explained the difficulties that result when an estimator leaves the company before a project closes, and another estimator must close out the project. Boze confirmed that the commissions are not incentive only to estimate and sell projects. Rather, the commissions are incentive to share in the profits of a project upon completion through selling *and* managing the project.

Ortolon disputed that Myrex's policy was ever conveyed to him or that he agreed to it.[5] He also claimed that commissions are paid for selling projects—not closing out projects. Nevertheless, again the "notice" element of quantum meruit focuses on what *Myrex*, not Ortolon, knew or should have known at the time the projects were sold. *See Heldenfels*, 832 S.W.2d at 41.[6] Regardless of Ortolon's

4. In *Heldenfels*, the court held that a subcontractor seeking payment from the city for beams the subcontractor delivered to the city's construction site at a contractor's request did not prove this quantum meruit element. 832 S.W.2d at 41. There was no evidence the city had notice before the subcontractor delivered the beams that the subcontractor anticipated payment from the city. *Id.*

5. Moffa testified he told Ortolon about this policy at least two times, and Ortolon agreed it was a smart policy because it encouraged stability in the employment of estimators. Boze testified that he told Ortolon during both of his pre-employment interviews that he had to be employed at the time a project closed to receive a bonus. Ortolon denied that any of these conversations occurred.

6. In *Heldenfels*, the majority rejected the dissent's assertion that quantum meruit recovery was appropriate based on evidence that the subcontractor relied on the city for payment because that was not the issue. 832 S.W.2d at 41, n. 4.

interpretation of the incentive bonus plan or its purpose, the evidence establishes that Myrex does not expect to pay commissions for projects that close after an employee resigns. Ortolon does not point to any evidence of Myrex's willingness to pay commissions for his projects that closed after he resigned.[7] *See Gen. Homes, Inc. v. Denison,* 625 S.W.2d 794, 797 (Tex.App.-Houston [14th Dist.] 1981, no writ).

Finally, Ortolon notes that Myrex paid another employee, Dean Thompson, a commission for a project that closed after he resigned. However, Moffa explained that Thompson returned to the company eight days after resigning. In negotiating his return, Myrex agreed to pay him a commission for one project that was still open when he resigned. This was a separate agreement from the incentive bonus plan. Contrary to Ortolon's suggestion, this agreement bolsters Myrex's assertion that it does not pay commissions for projects that close after an employee resigns. Myrex would not have needed to negotiate a special arrangement with Thompson if it already felt obligated to pay him for his projects that were still open when he resigned a few days earlier. Further, Moffa testified that Thompson did not demand, and was not paid, commissions for his other projects that were still open when he resigned.

In sum, there is no evidence Ortolon's work on the disputed projects was accepted by Myrex under such circumstances giving reasonable notification to Myrex that Ortolon was expecting to be paid commissions. Therefore, the evidence is legally insufficient to support the jury's finding to question eleven,[8] and Ortolon did not prove all elements of his quantum meruit claim. We sustain subpart (c) of Myrex's first issue.[9]

Because quantum meruit was the only basis for the trial court's judgment, we reverse and render judgment that appellee, David Ortolon, take nothing.

7. Ortolon argues Myrex knew Ortolon expected to be paid commissions for the disputed projects because he was always paid commissions when his projects closed. However, the testimony of the Myrex officers proved Myrex viewed commissions for projects that closed after an estimator resigned differently than commissions for projects that closed while the estimator was still employed.

8. Having sustained Myrex's legal sufficiency challenge, we need not consider its factual sufficiency challenge.

9. Because Ortolon did not prove all elements of his quantum meruit claim, we need not consider subpart (d) of Myrex's first issue challenging the measure of damages or its third issue challenging the amount of damages.