Reverse and Remand; Opinion Filed November 20, 2012.



In The

# Court of Appeals
# Fifth District of Texas at Dallas

No. 05-11-00486-CV

MICHAEL KALMUS, Appellant

V.

ELLA OLIVER AND FINANCIAL NECESSITIES NETWORK, INC., Appellees

On Appeal from the 193rd Judicial District Court
Dallas County, Texas
Trial Court Cause No. 10-03155-L

# OPINION

Before Justices Moseley, Fillmore, and Myers
Opinion By Justice Myers

Appellant Michael Kalmus appeals from a summary judgment granted in favor of appellees

Ella Oliver and Financial Resources, Inc. In three issues, appellant contends (1) the statute of frauds

does not apply to the oral employment agreement between appellant and appellees; (2) the trial court

erred by granting summary judgment on appellant's claim that appellees wrongfully deducted

$4,300.93 from appellant's last paycheck; and (3) the statute of frauds does not preclude appellant's

other causes of action. We reverse and remand.

DISCUSSION

In his first issue, appellant asks:

Does the oral employment contract whereby [appellees] agreed to pay [appellant]
commissions on sales as long as the they remained on the books (residual or

reoccurring commissions) and irrespective of whether or not [appellant] was employed with [appellees], violate the statute of frauds precluding enforcement of the oral contract and more specifically, can the alleged oral contract be performed within one year rendering the statute of frauds inapplicable?

We review de novo the trial court's summary judgment. *Mid–Century Ins. Co. of Tex. v. Ademaj*, 243 S.W.3d 618, 621 (Tex. 2007); *Beesley v. Hydrocarbon Separation, Inc.*, 358 S.W.3d 415, 418 (Tex. App.—Dallas 2012, no pet.). When reviewing a traditional summary judgment granted in favor of the defendant, we determine whether the defendant conclusively disproved at least one element of the plaintiff's claim or conclusively proved every element of an affirmative defense. *Am. Tobacco Co. v. Grinnell*, 951 S.W.2d 420, 425 (Tex. 1997). A matter is conclusively established if ordinary minds cannot differ as to the conclusion to be drawn from the evidence. *Beesley*, 358 S.W.3d at 418. The movant must show there was no genuine issue of material fact and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c); *Sysco Food Servs., Inc. v. Trapnell*, 890 S.W.2d 796, 800 (Tex. 1994). In deciding whether a disputed material fact issue exists precluding summary judgment, we must take evidence favorable to the non-movant as true, and we must indulge every reasonable inference and resolve any doubts in favor of the non-movant. *Sysco Food Servs.*, 890 S.W.2d at 800. When, as in this case, the court's order granting summary judgment does not specify the basis for the ruling, we will affirm the summary judgment if any of the theories presented to the trial court are meritorious. *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

"The statute of frauds exists to prevent fraud and perjury in certain kinds of transactions by requiring agreements to be set out in a writing signed by the parties." *Haase v. Glazner*, 62 S.W.3d 795, 799 (Tex. 2001). The statute of frauds is an affirmative defense in a breach of contract suit and renders a contract that falls within its purview unenforceable. *See* TEX. R. CIV. P. 94; TEX. BUS. &

–2–

COM. CODE ANN. § 26.01(a); *see also S & I Mgmt., Inc. v. Sungju Choi,* 331 S.W.3d 849, 854 (Tex. App.—Dallas 2011, no pet.) ("Under the statute of frauds, certain contracts are not enforceable unless they are in writing and signed by the person against whom enforcement of the contract is sought"). Thus, appellees had the burden to show they were entitled to summary judgment by pleading and proving all elements of their affirmative defense—the statute of frauds. *See Lathem v. Kruse,* 290 S.W.3d 922, 924 (Tex. App.—Dallas 2009, no pet.); *see also Dynegy, Inc. v. Yates,* 345 S.W.3d 516, 522 (Tex. App.—San Antonio 2011, pet. reinstated) (party pleading statute of frauds bears initial burden of establishing its applicability). If appellees established their asserted affirmative defense of the statute of frauds, the burden shifted to appellant, as the non-movant plaintiff, to show why summary judgment should not be granted. *Lathem,* 290 S.W.3d at 924.

The statute of frauds encompasses agreements that are "not to be performed within one year from the date of making the agreement." TEX. BUS. & COM.CODE ANN. § 26.01(b)(6). When a promise or agreement, either by its terms or by the nature of the required acts, cannot be completed within one year, it falls within the statute of frauds and is unenforceable unless it is in writing and signed by the person to be charged. *See id.* § 26.01(a), (b)(6); *Schroeder v. Tex. Iron Works, Inc.,* 813 S.W.2d 483, 489 (Tex. 1991), *overruled on other grounds by In re United Servs. Auto Ass'n,* 307 S.W.3d 299 (Tex. 2010); *Niday v. Niday,* 643 S.W.2d 919, 920 (Tex. 1982) (per curiam); *C.S.C.S., Inc. v. Carter,* 129 S.W.3d 584, 590 (Tex. App.—Dallas 2003, no pet.). If the agreement is capable of being performed within one year, it is not within the statute of frauds. *See Gerstacker v. Blum Consulting Eng'rs., Inc.,* 884 S.W.2d 845, 849 (Tex. App.—Dallas 1994, writ denied). The question of whether an agreement falls within the statute of frauds is one of law. *Bratcher v. Dozier,* 162 Tex. 319, 346 S.W.2d 795, 796 (Tex. 1961); *Biko v. Siemens Corp.,* 246 S.W.3d 148, 159 (Tex. App.—Dallas 2007, pet. denied). But determining whether an exception to the statute of frauds

applies is generally a question of fact. *See Adams v. Petrade Int'l., Inc.,* 754 S.W.2d 696, 705 (Tex. App.—Houston [1st Dist.] 1988, writ denied).

In deciding whether an agreement is capable of being performed within one year, we compare the date of the agreement to the date when the performance under the agreement is to be completed. *See* TEX. BUS. & COM. CODE ANN. § 26.01(b)(6); *Young v. Ward,* 917 S.W.2d 506, 508 (Tex. App.—Waco 1996, no writ). If there is a year or more between those two reference points, a writing is required to render the agreement enforceable. *Young,* 917 S.W.2d at 508.

When the date performance will be completed cannot be readily ascertained, the law provides that if performance could conceivably be completed within one year of the agreement's making, a writing is not required to enforce it. *See, e.g., Montgomery County Hosp. Dist. v. Brown,* 965 S.W.2d 501, 503 (Tex. 1988); *Miller v. Riata Cadillac Co.,* 517 S.W.2d 773, 775 (Tex. 1974); *Beverick v. Koch Power, Inc.,* 186 S.W.3d 145, 149 (Tex. App.—Houston [14th Dist.] 2005, pet. denied); *Shaw v. Maddox Metal Works, Inc.,* 73 S.W.3d 472, 480 (Tex. App.—Dallas 2002, no pet.); *Chacko v. Mathew,* No. 14-07-00613-CV, 2008 WL 2390486, at *3 (Tex. App.—Houston [14th June 12, 2008, pet. denied) (mem. op., not designated for publication). "A contract that could *possibly* be performed within a year, however improbable performance within one year may be, does not fall within the statute of frauds." *Beverick.,* 186 S.W.3d at 149 (emphasis in original) (citing *Hall v. Hall,* 158 Tex. 95, 308 S.W.2d 12, 15 (1957)). In *Miller,* for example, the court concluded that an indefinite term employment contract was performable within one year and, therefore, did not fall within the statute of frauds. *Miller,* 517 S.W.2d at 775.

On the other hand, promises of lifetime employment or employment until retirement age are usually the types of employment contracts that must be reduced to writing to be enforceable. *See Reyna v. First Nat'l Bank,* 55 S.W.3d 58, 71 (Tex. App.—Corpus Christi 2001, no pet.) (citing

*Schroeder*, 813 S.W.2d at 489). This is because the contract's duration is for the employee's working life, not until his death, and the completion date may be ascertained by determining the employee's anticipated retirement date. *Shaw.*, 73 S.W.3d at 480; *see also Schroeder*, 813 S.W.2d at 489 (oral employment agreement that appellant would be employed for another eight to ten years, until retirement, was not enforceable under statute of frauds). In *Shaw*, however, we distinguished cases involving promised lifetime annuities, noting the date of completion would be the individual's death, not his anticipated retirement. *Shaw*, 73 S.W.3d at 480. We cannot imply a duration for such contracts because, unlike an anticipated retirement date, there is no meaningful way to anticipate the date of someone's death. *Id.* Moreover, there is a distinction between termination of a contract and performance under the contract in that the death of an employee prior to retirement would terminate the lifetime employment agreement and result in nonperformance of the contemplated time frame of the agreement. *Id.*

Appellant's original petition alleged that, in August of 2004, he was approached by Walt Parker, president of Financial Necessities Network, Inc. (FINNI), d/b/a InsuranceMakesMeSick.com, about a position as an insurance salesman with FINNI. Appellant asserted that, in order to induce him to work for FINNI, Parker made certain promises. An oral employment agreement was reached between the parties that included, according to appellant, the following provisions:

1. Appellant would be employed by FNNI as a commissioned salesperson plus salary;

2. Appellant was guaranteed and promised a 25/70 percent commission rate with a $5000 salary to start;

3. After an initial period, salary would be reduced and commissions increased leading to 50/70 percent maximum commission and zero salary;

4. Appellant would receive "any and all commissions" concerning FINNI for "as long as they came in," and "the commission would remain at the commission rate at

the time of separation and would continue to pay as long as they came in," regardless of whether appellant was still employed with the business.

After appellant's employment with FINNI was terminated, Parker told appellant he would only pay a 25/50 percent commission rate through 2012, then later said he would only pay appellant that promised commission rate through January of 2009. Appellant also contended that Parker deducted $4,300.93 from appellant's final November 1, 2008 commission check without notifying appellant. Appellant asserted causes of action for breach of oral contract, violation of the Texas Sales Representative Act, the Texas Theft Liability Act, fraudulent misrepresentation, negligent misrepresentation, fraudulent inducement, promissory estoppel, and sought attorney's fees.

Appellees' motion for summary judgment was based entirely on the statute of frauds. Appellees argued the employment agreement was barred by the statute of frauds because it was actually a promise of lifetime employment or employment until retirement age, and therefore must have been in writing to be enforceable. The trial court's order granting summary judgment did not specify the basis for the court's ruling.

In their brief, appellees contend the summary judgment evidence established that the agreement in question was for lifetime employment or employment until retirement age, and thus incapable of being performed within a year. *See Schroeder*, 813 S.W.2d at 489; *Reyna*, 55 S.W.3d at 71. We disagree.

According to the record, appellant and Parker met at a restaurant in 2004 to discuss the terms of appellant's employment. In his deposition testimony, Parker described the financial incentives as follows:

> The arrangement was that he would receive a base salary of $5,000 a month, then there were different levels of commission. The first level of commission was a 25 percent commission off all business that was obtained through the lead systems that I set into place, primarily radio. 50 percent on all business that was obtained from

referrals from existing business associated friends, mutual friends and people we knew together, associated persons. For example, insurance company representative referrals, you know, that type of thing. 70 percent commission on business that he went out and generated through his own methods of either talking to people at his kids' softball games, basketball games, friends that they know, relatives, you know, that type of thing. And that there was an expectation of profitability within two years, at which time he stated he expects to be profitable within one year. And at that time is when the $5,000 base would go away. He would also have insurance benefits subsidized by the company as well as we outlined the retirement plan we had in place.

In his deposition, appellant testified:

Q. Yeah. Okay. I understand. What other details of your potential employment with Insurancemakesmesick did you discuss at the dinner in August of 2004 at Red Lobster?

A. Well, the longevity of it. That was the setup, 25/50/70. And the carrot of it all, as he would put it, was I was building a future for me, my family and building my own business. And if that business—if that led me to need to go back home or go to Austin if my child actually went to school there, that I could pull up roots and go out and stop marketing business, and I would continue to draw the commissions at the level that I was drawing upon that exit for as long as he kept the business on the books at his agency.

When asked why he ultimately fired appellant, Parker said the arrangement was not profitable:

Q. Why did you terminate Michael Kalmus?

A. Because after four years of not being profitable and subpar performance on production, it was not feasible to keep him with the company any more.

Q. When you say four years of not being profitable, can you explain that?

A. Yeah, I didn't make any money in the four years.

Appellant testified that the parties never discussed what would happen if he was fired, but he assumed he would "continue to earn those commissions" even if he was fired, regardless of the reason. As for the date performance would be completed, there is no summary judgment evidence the parties ever specified the duration of their agreement. Appellant testified that he "boldly" hoped to be profitable "in a year, not knowing the business." Parker told appellant, according to appellant's

deposition testimony, that he thought it would take two years "for both of us to be doing what we wanted to do." Appellant's "expectation" was that he would work for Parker until retirement:

> Q. So, in other words, you wouldn't expect to be terminated no matter how unprofitable you were or how many goals you missed?
>
> A. I never expected it because I was family. As he took care of his family members, he was taking care of me. My expectation was we were going to do this until retirement. I was committed to that, and we were committed to each other. There was an or-else [sic].
>
> Q. So did you expect, when you started on August 15, 2004, that if you didn't sell one dollar of insurance that Insurancemakesmesick would keep you around as a salesman?
>
> A. Yes.
>
> Q. Why?
>
> A. Because our expectations of my profitability and could be—could be profitable over time, but the commitment was it was going to take some time.

Appellant also testified:

> Q. Was it your expectation that after that $5,000 was to be phased out and that you were drawing zero base salary that even if you didn't sell any insurance then, they would still keep you as an insurance salesman?
>
> A. Yes.
>
> Q. Why?
>
> A. Because that was the expectation. Termination was not an option in my mind, nor was I—quitting was not an option. I was committed to it, as he was. It was my—it was my understanding.
>
> Q. So you would expect to be kept around for life even if you didn't bring in any business?
>
> A. Yes.
>
> Q. Even though the goal was for both of you to make money?
>
> A. Yes.

Q. You expected that even if you weren't profiting, they would still pay your health insurance, your contribution to the health savings account, your toll tag, your auto insurance, your phone allowance even if you weren't producing anything?

A. Yes.

Q. How much did you produce when you were at Insurancemakesmesick?

A. I can't say.

Hopes and expectations are insufficient to show performance within a year is impossible. *See Montgomery County*, 965 S.W.2d at 503-04 (employee's hope to work as long as she wanted did not show an agreement for many years of job security); *Abatement, Inc. v. Williams*, 324 S.W.3d 858, 859 (Tex. App.—Houston [14th Dist.] 2010, pet. denied) ("hopes and expectations are not enough to show performance within a year is impossible"); *Chacko*, 2008 WL 2390486, at *3 ("[a] contract does not fall within the statute of frauds based on the absence of a requirement to complete performance within a year; the lack of any expectation that performance will be completed within a year; or the fact that completion within a year proved to be impossible in light of later circumstances") (citing *Beverick.*, 186 S.W.3d at 149-50). An employment contract that does not specify a definite duration or prescribe conditions from which its duration can be determined is presumed to be terminable at will. *See, e.g., Montgomery County*, 965 S.W.2d at 502. The evidence in this case shows only an oral at-will employment agreement with an indefinite duration, and such agreements do not fall within the statute of frauds' one-year provision. *See id.* at 503 (noting that "[a]n employment contract for an indefinite term is considered performable within one year" and that vague, indefinite, and general comments cannot create a definite term of employment). As a result, the statute of frauds does not bar enforcement of the alleged agreement, and summary judgment was not warranted. Because we sustain appellant's first issue, we do not reach appellant's remaining

–9–

arguments on appeal.[1]

We reverse the trial court's judgment and remand this case for further proceedings.


_____
LANA MYERS
JUSTICE


110486F.P05

---



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

MICHAEL KALMUS, Appellant

No. 05-11-00486-CV          V.

ELLA OLIVER and FINANCIAL
NECESSITIES NETWORK, INC.,
Appellees

Appeal from the 193rd Judicial District
Court of Dallas County, Texas. (Tr.Ct.No.
10-03155-L).
Opinion delivered by Justice Myers, Justices
Moseley and Fillmore participating.

        In accordance with this Court's opinion of this date, the judgment of the trial court is
**REVERSED** and this cause is **REMANDED** to the trial court for new trial.  It is **ORDERED**
that appellant MICHAEL KALMUS recover his costs of this appeal from appellees ELLA
OLIVER and FINANCIAL NECESSITIES NETWORK, INC.


Judgment entered November 20, 2012.


_____
LANA MYERS
JUSTICE