# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-17-00326-CV

**Michael J. Gierut, Appellant**

**v.**

**Nina Morrison and Scholey-Morrison Community Options, Inc.**
**d/b/a Brookside Farm, Appellees**

### FROM THE DISTRICT COURT OF TRAVIS COUNTY, 98TH JUDICIAL DISTRICT
### NO. D-1-GN-15-004329, HONORABLE KARIN CRUMP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant Michael Gierut seeks unpaid commissions from his former employer Brookside Farm and its owner Nina Morrison (Appellees). Gierut appeals the district court's orders striking his amended petition and granting summary judgment dismissing his claims against Appellees. Finding no error below, we affirm the orders.

## BACKGROUND

Until 2015, Gierut worked at Brookside Farm, a residential and community-care facility that serves adults with chronic mental illness in the Austin area. With Gierut no longer employed at Brookside Farm, the parties dispute whether Appellees are contractually obligated to pay Gierut commissions on each client he recruited for as long as that client remains at Brookside.

In 2011, Morrison hired Gierut, her friend and roommate, to market Brookside Farm and recruit new clients. The parties never executed a written employment agreement, but agreed that Gierut would receive a salary of $2,500 per month plus commission for new clients he recruited.[1] During his employment, Gierut recruited seven new clients. He received a flat-fee monthly commission for at least one client, 40% commission for some clients, and 60% commission for other clients, in addition to his salary. Morrison terminated Gierut's employment in 2015, and Appellees offered Gierut $10,000 to sign a severance agreement and general release of "all claims against the Company, including those relating to his working relationship, the cessation thereof or any other matter." Gierut rejected the proposed agreement and release and sued Appellees alleging breach of contract, quantum meruit, and unjust enrichment.

The timing of the following events in district court impacts our analysis of the order granting the motion to strike:

July 11, 2016: Gierut took Morrison's deposition.

August 30, 2016: The discovery period closed.

December 19, 2016: Appellees filed a motion for summary judgment.

---

[1] Gierut alleges that, under the parties' initial oral agreement, his commission was to be 60% of "gross revenues" from each client he recruited. Morrison testified that the parties initially agreed Gierut would receive "up to 60% of revenues" for each client he recruited, but that there was no guarantee of 60% commission each month. Regardless of the parties' initial understandings, it is undisputed that Gierut was not paid a 60% commission on each of the seven clients he ultimately recruited to Brookside during his three-and-a-half years as an employee. And Gierut admits that there were "agreed reductions [in commissions] for certain clients." Gierut alleges that he took issue with this orally, but he points to no evidence in the record to suggest that he ever complained that his compensation was improper during his employment at Brookside.

January 9, 2017: Appellees filed a notice of hearing on their motion for summary judgment, scheduling that hearing for February 21, 2017.

January 31, 2017: Gierut filed an amended petition adding new causes of action for respondeat superior, simple fraud, and fraudulent inducement based on Morrison's deposition testimony.

February 7, 2017: Appellees moved to strike Gierut's amended petition.

February 21, 2017: District court heard argument on Appellees' motion for summary judgment and motion to strike.

February 28, 2017: District court granted both motions.

Gierut filed a motion for new trial which was denied by operation of law, and subsequently perfected this appeal.

## LEGAL STANDARDS

We review a grant of summary judgment de novo. *See, e.g.*, *Twin Creeks Golf Grp., L.P. v. Sunset Ridge Owners Ass'n*, 537 S.W.3d 535, 539 (Tex. App.—Austin 2017, no pet.) (citing *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005)). Under this standard, we "take as true all evidence favorable to the non-moving party, and we indulge every reasonable inference and resolve any doubts in the non-moving party's favor." *Id.* When, as here, the trial court does not specify the grounds on which it granted summary judgment, we "must affirm if any of the grounds asserted in the motion are meritorious." *Community Health Sys. Prof'l Servs. Corp. v. Hansen*, 525 S.W.3d 671, 680 (Tex. 2017) (citation omitted). "[W]hen the motion asserts both no-evidence and traditional grounds, we first review the no-evidence grounds." *Id.* (citing *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 600 (Tex. 2004)). "If the nonmovant fails to produce more than a

3

scintilla of evidence on the essential elements of a cause of action challenged by a no-evidence motion, there is no need to analyze the movant's traditional grounds for summary judgment." *Id.* at 680–81 (citing Tex. R. Civ. P. 166a(i)). If we do not find the grounds asserted in support of no-evidence summary judgment meritorious, we assess any traditional summary judgment grounds. *Id.* To obtain traditional summary judgment, the movant must show "that no genuine issue of material fact exists and that [the movant] is entitled to judgment as a matter of law." *Id.* at 680 (citing Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003)). If the movant satisfies this initial traditional summary judgment burden, the burden shifts to the nonmovant to produce evidence raising an issue of fact. *See* Tex. R. Civ. P. 166a(c); *Amedisys, Inc. v. Kingwood Home Health Care, LLC*, 437 S.W.3d 507, 517 (Tex. 2014). A genuine issue of material fact exists if the record evidence "would enable reasonable and fair-minded people to differ in their conclusions." *First United Pentecostal Church of Beaumont v. Parker*, 514 S.W.3d 214, 219 (Tex. 2017) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

We review an order striking an amended pleading for abuse of discretion. *See, e.g.*, *State Bar of Texas v. Kilpatrick*, 874 S.W.2d 656, 658 (Tex. 1994).

## DISCUSSION

### I.

In his first issue, Gierut argues that the district court "erred in granting summary judgment because there is a genuine issue of material fact regarding Gierut's entitlement to commission payments from Appellees per his oral at-will employment contract." Appellees filed

4

a hybrid summary judgment motion that included both traditional and no-evidence grounds. We address Gierut's three claims of breach of contract, quantum meruit, and unjust enrichment in turn, beginning our analysis of each under the no-evidence framework. *See, e.g.*, *Hansen*, 525 S.W.3d at 680.

***Breach of Contract***

Appellees sought no-evidence summary judgment on Gierut's breach of contract claim on the ground that no contract, implied or in fact, existed between the parties. Alternatively, Appellees sought traditional summary judgment on the ground that the statute of frauds would render any contract that did exist between the parties unenforceable. Gierut counters that the parties had a specific agreement entitling him to particular commissions for the life of his recruits' tenure at Brookside, and that the statute of frauds does not apply to that agreement.

The elements of a breach-of-contract claim are (1) the existence of a valid contract; (2) the plaintiff performed or tendered performance as the contract required; (3) the defendant breached the contract by failing to perform or tender performance as the contract required; and (4) the plaintiff sustained damages as a result of the breach. *USAA Tex. Lloyds Co. v. Menchaca*, 545 S.W.3d 479, 502, n.21 (Tex. 2018). Appellees argue that there is no evidence of the first element: the existence of a valid contract.[2] In support of their no-evidence motion, Appellees cite

---

[2] "The difference between contracts formed through express promises and those formed through implied promises is the means by which the contracts are formed." *Mann Frankfort Stein & Lipp Advisors, Inc. v. Fielding*, 289 S.W.3d 844, 850 (Tex. 2009). Generally speaking, the terms of an express contract are recited by the parties, while an implied contract arises from the parties' conduct. *Haws & Garrett Gen. Contractors, Inc. v. Gorbett Bros. Welding Co.*, 480 S.W.2d 607, 609 (Tex. 1972); s*ee also, e.g.*, Restatement (Second) of Contracts § 4 cmt. a (1981) (stating that

*Montgomery County Hospital District v. Brown*, 965 S.W.2d 501, 502 (Tex. 1998), for the proposition that—absent express agreement to the contrary—employment may be terminated at will by either party with or without cause. This general principle does not resolve the inquiry because Gierut does not argue in this appeal that he had a contract for non-terminable employment. Rather, he argues that he had a contract for non-terminable *commissions* on the clients he recruited for the duration of the clients' tenure at Brookside, regardless of whether Gierut was still employed there. Thus, in assessing the breach of contract claim, the question is whether Gierut had a contract entitling him to post-termination commissions, not whether Gierut's status as an at-will employee was altered by agreement. *See generally In re 24R, Inc.*, 324 S.W.3d 564, 566–67 (Tex. 2010) ("At-will employment does not preclude employers and employees from forming subsequent contracts, 'so long as neither party relies on continued employment as consideration for the contract.'" (citation omitted)).

Gierut's single citation to *Kalmus v. Ella Oliver & Financial Necessities Network, Inc.*, 390 S.W.3d 586 (Tex. App.—Dallas 2012, no pet.), does not resolve this inquiry. Gierut cites *Kalmus* for the proposition that an at-will employee may enforce an agreement to pay commissions after his termination. The issue in *Kalmus*, however, was whether the district court properly granted a former employer's "motion for summary judgment [which] was *based entirely on the statute of frauds*." *Id.* at 591 (emphasis added). The court of appeals there concluded that the evidence before it "shows only an oral at-will employment agreement with an indefinite duration, and such

---

"[t]he distinction" between express and implied contracts "lies merely in the mode of manifesting assent").

agreements do not fall within the statute of frauds." *Id.* at 593 (citing *Montgomery Cty.*, 965 S.W.2d at 503). But it did not consider the no-evidence summary judgment argument Appellees raise here: whether there was any enforceable agreement at all. We need not consider whether the alleged agreement violates the statute of frauds (Appellees' traditional summary judgment argument) unless we find evidence to support the existence of such agreement in the first place. *See, e.g.*, *Hansen*, 525 S.W.3d at 680–81 ("If the nonmovant fails to produce more than a scintilla of evidence on the essential elements of a cause of action challenged by a no-evidence motion, there is no need to analyze the movant's traditional grounds for summary judgment.").

To prove the first element of a breach of contract claim—the existence of a valid contract—a plaintiff must show:

> (1) an offer was made; (2) the other party accepted in strict compliance with the terms of the offer; (3) the parties had a meeting of the minds on the essential terms of the contract (mutual assent); (4) each party consented to those terms; and (5) the parties executed and delivered the contract with the intent that it be mutual and binding.

*Menchaca*, 545 S.W.3d at 502, n.21(citation omitted). On the briefs and our review of the record, Gierut has identified no evidence of a contract entitling him to commission after his employment ended. "[A] general reference to a voluminous record which does not direct the trial court and parties to the evidence on which the movant relies is insufficient" to generate a genuine issue of fact. *Rogers v. Ricane Enters., Inc.*, 772 S.W.2d 76, 81 (Tex. 1989). "[C]ourts 'are not required to search the record without guidance.'" *Brookshire Katy Drainage Dist. v. Lily Gardens, LLC*, 333 S.W.3d 301, 308 (Tex. App.—Houston [1st Dist.] 2010, pet. denied) (quoting *Aleman v. Ben E. Keith Co.*,

7

227 S.W.3d 304, 309 (Tex. App.—Houston [1st Dist.] 2007, no pet.)); *see also* Tex. R. App. P. 38.1(i), 38.2(a) (requiring appellate briefs to include "appropriate citations to authorities and to the record").

Gierut's brief identifies evidence that Gierut received a salary and commissions while employed but only attempts to show a contract for post-employment commissions with a cursory reference to four pages of Morrison's deposition testimony.[3]  In her deposition, Morrison testified as follows regarding Gierut's flat-fee monthly commission for "CO,"[4] one of the first residents he recruited:

Q.   Do you remember why you agreed to a flat fee for CO?

A.   No, I don't remember why.

Q.   [W]as it your understanding that every month CO lived at Brookside Farms [sic] Mike got a commission of $1,500?

A.   Well, I was trying to get his pay where it needed to be and that was the first step.

. . .

Q.   [Y]ou didn't agree to pay Mike [Gierut] a $1,500 commission for CO only for the month of May 2012?

A.   Correct.

Q.   It was as long as CO was a resident here at Brookside Farm you're getting your $1,500 each month.

---

[3]  Gierut offers no legal authority to support his argument that Appellees' offer to pay him $10,000 in exchange for a release of his potential claims against them is evidence of a valid contract between the parties, and finding none, we reject this argument.

[4]  We refer to specific Brookside residents by initials only to protect their privacy.

A.      I don't remember having a conversation about that.

. . .

Q.      What do you think the agreement was?

A.      That was one of the first clients and that was a base for building your pay.

Q.      Okay. But how long were you going to pay the $1,500 related to CO?

A.      Until she left on her own decision.

Q.      That's what I was asking.

A.      I mean, I didn't have a cognitive thought process to that. We didn't have a discussion about that.

Q.      Was Mike subject to whatever you decided in terms of if you wanted to pay the commission and how much? In other words, were you the one that got to dictate that number and length of time?

A.      My goal was to get him to [$]10,000 a month and I did that. And yes, you could say I dictated but we also had conversations . . . . And there was many times that it didn't—it wasn't 60 percent and he did not complain.

Consistent with Morrison's deposition testimony, Gierut testified that he did not recall the parties discussing what would happen to his commissions if he stopped working at Brookside Farm.

On this record, the required "meeting of the minds" was never reached as to any contract for Gierut to be paid commissions in the event that his employment was terminated. *E.g.*, *Menchaca*, 545 S.W.3d at 502, n.21 (noting that meeting of minds is required to establish contract); *Excess Underwriters at Lloyd's, London v. Frank's Casing Crew & Rental Tools, Inc.*, 246 S.W.3d 42, 48–49 (Tex. 2008) ("As we reaffirmed in *Matagorda County*, 'a meeting of the minds is an essential element of an implied-in-fact contract.'" (citations omitted)). Notably, Gierut's brief quotes

9

only the portion of Morrison's deposition indicating that commission payments would continue until resident CO left the facility. But Morrison's testimony about how long *she* intended to pay commission does not establish a contract between the parties. *See Menchaca*, 545 S.W.3d at 502, n.21. And, in any event, she also testified that she "didn't have a cognitive thought process" regarding the eventuality that Gierut might be terminated, and Gierut testified that he did not recall a discussion on that point. Without contemplating or discussing this possibility, the parties cannot have formed a contract to govern that circumstance. *Id*.

In addition to the cursory citation to deposition testimony, Gierut attempts to rely upon a conclusory affidavit appended to his response to Appellees' motion for summary judgment. In that affidavit, Gierut indicated that he insisted upon an agreement that "Brookside Farm could not cut off my commissions by terminating me or freezing my earnings." This is not competent summary judgment evidence because it contradicts his earlier testimony that the parties never discussed what would happen if his employment at Brookside ended. *See, e.g.*, Tex. R. Civ. P. 166(a) ("A summary judgment may be based on uncontroverted testimonial evidence of an interested witness . . . if the evidence is clear, positive and direct, otherwise credible and free from contradictions and inconsistencies, and could have been readily controverted."). Thus, there is no evidence of a contract for Appellees to pay Gierut post-termination commission. Because the record supports no-evidence summary judgment on Gierut's breach of contract claim, we do not address Appellees' traditional summary judgment argument that any contract between the parties was unenforceable under the statute of frauds. *See Hansen*, 525 S.W.3d. at 680–81 (citing Tex. R. Civ. P. 166a(i)).

10

*Quantum Meruit*

Appellees urge that Gierut's quantum meruit claim fails because there is no evidence of reasonable notice that Gierut expected to be paid the money he seeks in this lawsuit, and reasonable notice is an essential element of such claim. Gierut counters that Appellees were on notice of his expectations. Quantum meruit is an equitable theory of recovery based on an implied agreement to pay for benefits received. *Heldenfels Bros., Inc. v. City of Corpus Christi*, 832 S.W.2d 39, 41 (Tex. 1992). "'The purpose of this common law doctrine is to prevent a party from being 'unjustly enriched' by 'retain[ing] the benefits of the . . . performance without paying anything in return.'" *Hill v. Shamoun & Norman, LLP*, 544 S.W.3d 724, 732 (Tex. 2018) (quoting *Truly v. Austin*, 744 S.W.2d 934, 938 (Tex. 1988)) (alteration original). A quantum meruit plaintiff must prove:

(1) valuable services were rendered or materials furnished;

(2) for the person sought to be charged;

(3) those services and materials were accepted by the person sought to be charged, and were used and enjoyed by him; and

(4) the person sought to be charged was reasonably notified that the plaintiff performing such services or furnishing such materials was expecting to be paid by the person sought to be charged.

*Id.* at 732–33 (citing *Vortt Expl. Co. v. Chevron U.S.A., Inc.*, 787 S.W.2d 942, 944 (Tex. 1990)). The right to recover under a theory of quantum meruit is independent of any contract. *Vortt Expl. Co.*, 787 S.W.2d at 944; *see also Woodard v. Southwest States, Inc.*, 384 S.W.2d 674, 675 (Tex. 1964) ("Recovery on an express contract and on quantum meruit are inconsistent."). If successful,

11

"[t]he measure of damages for recovery under a quantum-meruit theory is the reasonable value of the work performed and the materials furnished." *Hill*, 544 S.W.3d at 733 (citation omitted).

Gierut's brief does not offer any legal authority to support reversal of the district court's grant of summary judgment on his quantum meruit claim. It instead repeats the same factual argument made in support of Gierut's breach of contract theory. We find no reliable summary judgment evidence that, during his employment, Gierut ever notified Appellees that he expected to be paid anything more than what Appellees have already paid him. In attempting to show reasonable notice, Gierut relies upon an email he sent to Morrison on September 12, 2013, listing commissions he believed were due to him for the month. He acknowledges, however, that the amount requested in his email is "the exact amount Brookside Farm paid Gierut in September 2013." And according to his brief, Gierut is not challenging the amounts he was paid during his employment. Rather, he is seeking commission on client payments made after his termination.[5] This email listing commissions paid in full during Gierut's employment is plainly insufficient to have given Appellees reasonable notice that, in the event he was terminated, Gierut expected that he would continue to receive commissions.

Indeed, reasonable notice "focuses on what the recipient of the services knew or should have known at the time the services were accepted." *Myrex Indus., Inc. v. Ortolon*, 126 S.W.3d 548, 551 (Tex. App.—Houston [14th Dist.] 2003, pet. denied). In determining whether

___

[5] For example, Gierut states in his brief that "[t]here is no dispute Gierut was paid and accepted the limited reductions to the commissions . . . shown in Brookside Farm's payment records. And he is not attempting to change those agreed modifications. He was terminated from Brookside Farm and now requests full payment of his earned commissions at the agreed percentages."

12

Gierut presented evidence of reasonable notice that he expected to be paid post-termination commissions, we agree with the approach our sister court took in *Myrex*, which involved a former salesman (Ortolon) who—at the time he resigned—demanded commissions on projects he sold for Myrex that had not yet "closed." *Id.* The court of appeals found it dispositive that "Ortolon does not point to any evidence of Myrex's willingness to pay commissions for his projects that closed after he resigned." *Id.* at 552. This was so "[r]egardless of Ortolon's interpretation of" the parties' agreement regarding commissions. *Id.* at 551–52. Without evidence that Myrex was willing to pay commissions after Ortolon resigned, Ortolon could not show that his services "were accepted by the person sought to be charged . . . under such circumstances as reasonably notified the person . . . that the plaintiff in performing such services was expecting to be paid." *Id.* at 551 (quoting *Heldenfels Bros.*, 832 S.W.2d at 41) (alterations and emphasis in *Myrex*).

The only evidence Gierut's brief offers to support reasonable notice that he expected to be paid commissions even in the event he was terminated is his own conclusory, contradicted, self-serving affidavit, which is not competent summary judgment evidence for the reasons set out above. *See, e.g.*, Tex. R. Civ. P. 166(a). This is insufficient to raise a fact issue regarding whether Appellees as "the recipient of the services knew or should have known at the time the services were accepted" that Gierut expected to be paid commissions even after he was terminated. *Myrex*, 126 S.W.3d at 551. Finding no such evidence, we conclude that no-evidence summary judgment on Gierut's quantum meruit claim was properly granted. Accordingly, we do not reach Appellees' traditional summary judgment argument on that claim. *See, e.g.*, *Hansen*, 525 S.W.3d. at 680–81.

13

*Unjust Enrichment*

Appellees sought no-evidence summary judgment on Gierut's unjust enrichment claim, arguing that (1) unjust enrichment is not an independent cause of action, and (2) even if it were, Gierut did not demonstrate any fraud, duress, or the taking of undue advantage. In response, Gierut contends that "[e]ach resident procured by Gierut that remains at Brookside Farm is paying over $5,000 a month," and that "[t]o allow Appellees to terminate Gierut's employment and cut off the agreed compensation is unjust enrichment—Appellees keep the benefits without paying the costs." Unjust enrichment is "a measure of damages, not a cause of action." *City of Harker Heights v. Sun Meadows Land, Ltd.*, 830 S.W.2d 313, 317 (Tex. App.—Austin 1992, no writ). Because we find no support for Gierut's breach of contract or quantum meruit claims, we find no basis on which he could recover for unjust enrichment: without a cause of action, there is no need for any "measure of damages." *See id.*[6]

## II.

In his second issue, Gierut argues that the district court erred in granting Appellees' motion to strike his amended petition adding allegations of simple fraud, fraudulent inducement, and respondeat superior. Appellees urge that Gierut's amendment was prejudicial and amounted to unfair surprise on its face because it reshaped the nature of the case; that they presented evidence of surprise or prejudice insofar as the delay in amending resulted from Gierut's lack of diligence; and

---

[6] Gierut also alleges that he has a fraud claim against Brookside Farm. He admits, however, that he did not assert this claim in his original petition, and instead, only asserted it in his amended petition, which the district court struck. Because the merits of this claim were not before the district court, we do not review them here. *See* Tex. R. App. P. 33.1.

14

that the statute of limitations barred Gierut's newly pleaded claims. Gierut argues that there was no unfair surprise or prejudice since he filed his amended petition "three weeks before the summary judgment hearing and months before trial;" that he need not show good cause for delaying his amendment until the end of the discovery period; and that limitations does not bar his new claims.

"A trial court's decision on whether to allow the amendment of pleadings is reviewed under an abuse-of-discretion standard." *Perez v. Embree Const. Grp., Inc.*, 228 S.W.3d 875, 882–83 (Tex. App.—Austin 2007, pet. denied) (citation omitted). That discretion is guided by Texas Rule of Civil Procedure 63, which provides that "Parties may amend their pleadings . . . at such time as not to operate as a surprise to the opposite party." Tex. R. Civ. P. 63.[7] Consistent with this Rule, "A trial court must permit a pleading amendment unless (1) the opposing party presents evidence of surprise or prejudice or (2) the amendment asserts a new cause of action or defense, and thus is prejudicial on its face, and the opposing party objects to the amendment." *Dunbar v. El Khaoua*, No. 03-14-00345-CV, 2015 WL 4999089, at *3 (Tex. App.—Austin Aug. 21, 2015, no pet.) (mem. op.) (citing *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990); *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 593 (Tex. App.—Austin 2013, pet. denied)); *see also F.R. v. Texas Dep't of Family & Protective Servs.*, No. 03-17-00487-CV, 2017 WL 6503082, at *19 (Tex. App—Austin Dec. 15, 2017, no pet.) (mem op.) (same).

---

[7] Leave of court is required if a party seeks to amend in the seven days leading up to a trial or hearing on a motion for summary judgment, but this is not implicated by the facts here. *See generally* Tex. R. Civ. P. 63 (requiring leave to amend within 7 days of trial); *Thomas v. Graham Mortg. Corp.*, 408 S.W.3d 581, 593 (Tex. App.—Austin 2013, pet. denied) ("A summary-judgment proceeding is a trial within the meaning of rule 63; thus, a party must seek leave of court before filing an amended pleading within seven days of a summary-judgment hearing.") (citing *IKB Indus. (Nigeria), Ltd. v. Pro–Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997)).

Because Gierut's amendment added new causes of action and Appellees objected, the trial court had discretion to refuse the amendment. *E.g.*, *Greenhalgh*, 787 S.W.2d at 939. When, as here, amendments "which introduce new substantive matter have been refused by the trial court under Rule 63, the burden of showing an abuse of discretion is on the complaining party, rather than on the opposite party to show surprise." *Hardin v. Hardin*, 597 S.W.2d 347, 349 (Tex. 1980); *see also, e.g.*, *Perez*, 228 S.W.3d at 883 ("If an amendment is prejudicial on its face, the opposing party does not bear the burden of showing prejudice or surprise, as such a showing 'may be based on the trial court's conclusion that the amendment on its face is calculated to surprise or that the amendment would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial.'") (quoting *Hardin*, 597 S.W.2d at 349).[8] "When reviewing matters committed to a trial court's discretion," we "may not substitute [our] own judgment for the trial court's judgment," nor may we "set aside the trial court's finding unless it is clear from the record that the trial court could only reach one decision." *In re Nitla S.A. de C.V.*, 92 S.W.3d 419, 422 (Tex. 2002).

On the record before us, the trial court reasonably could have concluded "that the amendment on its face is calculated to surprise," and rejected it accordingly. *Perez*, 228 S.W.3d at 883 (quoting *Hardin*, 597 S.W.2d at 349). Gierut asserted that he obtained the evidence supporting his new claims at Morrison's July 11, 2016 deposition. Yet he did not amend his petition in the approximately one-and-a-half months then remaining in the discovery period, which would have

[8] We have also stated that "[a]n amendment adding a new cause of action or defense operates as a surprise and is prejudicial on its face if it (1) reshapes the nature of the case, (2) could not have been anticipated, and (3) prejudices the plaintiff's presentation of the case." *Thomas*, 408 S.W.3d at 593 (citation omitted).

16

given Appellees an opportunity to conduct any additional discovery they believed necessary to defend against those claims in the district court. And when Appellees moved for summary judgment, Gierut still did not amend his petition. Instead, he waited nearly a month and a half after Appellees sought summary judgment (and approximately six and a half months after Morrison's deposition). In fact, he waited until after the hearing on Appellees' summary judgment motion had been scheduled to assert these additional causes of action. Given the timing of these events in the context of the entire record, the district court could reasonably have concluded that this was gamesmanship "calculated to surprise" Appellees. As the objecting party, Gierut has not carried his burden to show otherwise. *See, e.g.*, *Hardin*, 597 S.W.2d at 349.

Indeed, while delay alone might be insufficient to find that an amendment is "calculated to surprise," we review the district court's exercise of discretion in the context of the entire case. Gierut emphasizes that his amendment was filed "three months before trial," urging that this allowed Appellees ample time to prepare to defend against the new claims he raised. But because "[a] summary-judgment proceeding is a trial within the meaning of rule 63," *Thomas*, 408 S.W.3d at 593, we consider Gierut's amendment as if it had been filed three weeks before a trial on the merits for purposes of whether it was calculated to surprise. "When the record shows a lack of diligence in bringing the amendment and when the matter appears to have been known by the party seeking to amend and is not based on any newly discovered facts, the court does not abuse its discretion in refusing to allow the amendment." *Rough Creek Lodge Operating, L.P. v. Double K Homes, Inc.*, 278 S.W.3d 501, 509 (Tex. App.—Eastland 2009, no pet.).[9] Gierut has not shown that

---

[9] Gierut attempts to distinguish *Rough Creek Lodge*, which dealt with a trial amendment under Texas Rule of Civil Procedure 66, while this case involves a pretrial amendment. But Rule

17

the district court abused its discretion in denying his amendment here. Finding a basis upon which the district court could reasonably have concluded that "the amendment on its face [was] calculated to surprise," we find that it acted within its discretion and do not reach the issue of whether the amendment "would reshape the cause of action, prejudicing the opposing party and unnecessarily delaying the trial." *See Perez*, 228 S.W.3d at 883 (quoting *Hardin*, 597 S.W.2d at 349).

## CONCLUSION

Finding no error below, we affirm the district court's orders granting Appellees' motion for summary judgment and motion to strike Gierut's amended petition.

_____

Michael Toth, Justice

Before Chief Justice Rose, Justices Goodwin and Toth

Affirmed

Filed: December 21, 2018

---

63 covers both trial amendments and pretrial amendments. *See Halmos v. Bombardier Aerospace Corp.*, 314 S.W.3d 606, 623 (Tex. App.—Dallas 2010, no pet.) (citing Tex. R. Civ. P. 63; *Smith Detective Agency & Nightwatch Serv., Inc. v. Stanley Smith Sec., Inc.*, 938 S.W.2d 743, 748 (Tex. App.—Dallas 1996, writ denied)). "Case law concerning the trial court's discretion to allow or strike amended pleadings makes no distinction in the standard to be applied under rules 63 and 66." *Id.* (citing *Greenhalgh v. Service Lloyds Ins. Co.*, 787 S.W.2d 938, 939 (Tex. 1990)).